**UNITED STATES of America, Appellee,**

v.

**Carol AMEND, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Carol AMEND, Appellant.**

Nos. 84–5356(L), 84–5357.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1985.

Decided April 22, 1986.

Rehearing and Rehearing In Banc Denied May 30, 1986.

Joel Hirschhorn (Rhea P. Grossman, Miami, Fla., Jack B. Swerling, Columbia, S.C., on brief) for appellant.

John McIntosh, Asst. U.S. Atty., and Robert C. Jendron, Jr., Asst. U.S. Atty., (Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before SPROUSE and ERVIN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

SPROUSE, Circuit Judge:

Carol Amend appeals from her conviction on all counts of a nine-count indictment which charged her, *inter alia*, with engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848.[1] The district court sentenced her on the CCE count only to a prison sentence of thirty years without possibility of parole and a fine of $100,000, and ordered her to forfeit all assets and profits gained through her illicit enterprise. We affirm her conviction and sentence and affirm in part and vacate in part the forfeiture judgment.

---

1. The Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, §§ 303, 305, 98 Stat. 2044, 2050, amended 21 U.S.C. § 848, effective October 12, 1984, several days prior to Amend's trial. The changes do not affect disposition of Amend's appeal, and, therefore, we need not determine the application of the 1984 amendments to Amend's conviction.

The jury also convicted her of conspiracy to import marijuana, conspiracy to distribute and six substantive importation and distribution offenses in violation of 21 U.S.C. §§ 963, 846, 960(a)(1), and 841(a)(1) and of 18 U.S.C. § 2.

## I.

The testimony at Amend's trial established her involvement in at least five marijuana smuggling offenses between 1975 and 1980.

### The Mississippi Conviction

James Tucker, Assistant United States Attorney for the Southern District of Mississippi, testified that Amend was convicted of conspiracy to import marijuana and conspiracy to possess marijuana in federal court in the Southern District of Mississippi in 1976. Her convictions resulted from her involvement in the importation of 40,000 pounds of marijuana in 1975.

### The "Venganza" Scheme

In 1978, Amend hired Rocky Bradford to captain the "Venganza" in a venture to smuggle 7,500 pounds of marijuana into Barnegat Bay, New Jersey. Bradford flew to St. Martin to meet with Amend and Jerry Kilpatrick, one of Amend's associates, to finalize arrangements for the venture. At this meeting, Amend told Bradford that Gustavus Diaz would be the source of the marijuana in South America. Bradford also testified that Amend had indicated very clearly that Kilpatrick worked for her. Two days before the boat was to leave for South America, Bradford and his two crew members met with Amend and Kilpatrick in St. Thomas, where the group discussed the pick-up and unloading sites. Bradford sailed to South America, where he met Kilpatrick and loaded approximately 7,500 pounds of marijuana onto the "Venganza." Bradford then returned on the "Venganza" to St. Martin, where he met with Amend and Kilpatrick. Amend and the others removed a bale of the marijuana from the ship to test its quality. They also discussed the plan to transport the marijuana to Barneget Bay, New Jersey where, as Amend informed Bradford, Fred Fillingham, a close associate of Amend, was to be the contact.

Bradford sailed the "Venganza" to Barneget Bay where he met Fillingham and transferred the marijuana to the "Adrienne," a vessel which Fillingham had provided for transport to shore. The smugglers then trucked the marijuana to a house which Fillingham had rented. The marijuana was later moved to a house which Amend and Kilpatrick had leased. Bradford and a crew member testified that they saw Amend on Fillingham's boat, although another crew member testified that he had not seen her. Several witnesses testified about the period in which the marijuana was kept in the second "stash" house. Amend was present at various times, and Patrice Bradford testified that Amend "acted as if [the marijuana] was hers." John Black testified that Amend told him she owned the "Venganza." He also testified that after the successful completion of the New Jersey venture, she told him that she would give the offloaders a $3,000 bonus for staying for a longer period than they had originally planned. Other witnesses' testimony concerned large amounts of money which traded hands and was counted and stored at the house. Bradford testified that he counted $2 million being kept in Amend's bedroom during this period.

### The Violations Relating to the "Serena" and "Scandal" Offloads

In May 1979, Amend was looking for offloading sites near Charleston, South Carolina. By this time, Bradford had formed his own independent "offload business." Amend hired him to provide his services for a single 25,000 pound shipment into South Carolina to occur in June. Enno Brouwer testified that Amend had instructed him to go to Dominica to await instructions. In Dominica, she directed him to meet the mother ship, "The Golden Promise," which Fillingham owned. Amend paid Fillingham $140,000 for the use of the vessel. Fillingham testified that he picked up the marijuana in Columbia and took it to Dominica, where he met Amend and Kilpatrick. The marijuana was then distributed among four sailboats. Amend hired two crew members for one of the vessels and with Kilpatrick obtained Dennis Drum's services to take the "Venganza" to Tortola. Kilpatrick subsequently directed Drum to move the boat to Dominica. Fillingham

testified that he and Amend owned two of the boats, the "Venganza" and the "Scandal."

Kilpatrick informed Bradford that the marijuana would arrive at Port Royal Sound, South Carolina on three boats instead of on one as originally planned.[2] Bradford told Kilpatrick that his fee would be $1 million for this riskier plan. Kilpatrick replied that he would have to check with Amend. Kilpatrick later agreed to the new terms.

The "Scandal," carrying 7,000 pounds of marijuana, arrived on June 3, 1979. The second, the "Serena," carrying 7,500 pounds, arrived on June 12, 1979. Amend, however, was not present at Port Royal Sound for the arrival or unloading of either boat. The third sailboat, the "Venganza," sank off the Georgia coast. Immediately after the sinking, Kilpatrick, Bradford and another man went to Georgia to find out what had happened. One of the crewmen of the "Venganza" testified that he was hired by and received instructions from Amend and Kilpatrick. An attorney, Mark Singer, testified that Kilpatrick contacted him to represent the crew arrested from the "Venganza."

*The "Super Bowl Sunday" Scheme*

Bradford was again hired as a contract offloader for a shipment of approximately 20,000 to 22,000 pounds of marijuana due to come into South Carolina on Sunday, January 20, 1980.[3] Bradford sent his wife, Patrice, to St. Barts, where she met Amend and Fillingham. Patrice and Amend then went to Aruba, where Patrice acted as an interpreter between Amend and Gustavos Diaz. Bradford later sent John Black to Guadeloupe, where Amend instructed him to deliver the coordinates of the offload site to the captain of the "Dutch Treat," which would carry the shipment to South Carolina.

Prior to the shipment, Bradford arranged accommodations for Amend and Tony Locke on Seabrook Island. Allen Patterson, a contract "offloader," testified that Locke acted "in the same capacity that Jerry Kilpatrick had, he was going to be there at the unload and help and supervise and generally make sure we didn't steal any of the marijuana." He also testified that when a Coast Guard ship almost discovered the "Dutch Treat," Amend excitedly remarked, " 'You got to do something, that's my boat and my crew and my load, what are you going to do?' " Another participant testified that Amend owned the marijuana and directed activities in general. The "Dutch Treat" safely unloaded approximately 22,000 pounds of marijuana on January 20, 1980.

## II.

In a multi-pronged attack on her conviction, Amend assigns as error the sufficiency and constitutionality of the continuing criminal enterprise count of the indictment, the denial of a bill of particulars, a motion to exclude evidence of the Mississippi conviction and a motion for acquittal, and the charge to the jury. She attacks the indictment as insufficient to allow forfeiture, the evidence as insufficient to establish the government's right to forfeiture, and the court's instructions and jury form on forfeiture as reversible error. She contends that the forfeiture order and post-judgment procedures violated her due process rights, and that she was denied a fair trial as a result of judicial bias and improper evidentiary rulings.

Some of Amend's contentions concerning the forfeiture proceedings are meritorious, and we shall consider them, *infra*, in greater detail. Most of her "shotgun" approach on appeal, however, is without substantial merit. First, she contends that the indictment was insufficient to charge her with a continuing criminal enterprise

---

2. The fourth sailboat apparently sailed to Canada.

3. This venture coincided with the National Football League's "Super Bowl Sunday." Both the appellant and the government use the Super Bowl reference to designate this particular smuggling venture.

violation because it does not allege the elements of the crime, principally the names of the five individuals with whom she acted in concert. Alternatively, she asserts that the district court should have granted a bill of particulars setting forth this information. It has been consistently held that it is sufficient in a continuing criminal enterprise charge if the indictment tracks the statute. *United States v. Lurz,* 666 F.2d 69, 78 (4th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *United States v. Sperling,* 506 F.2d 1323, 1344 (2d Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). Count Nine of Amend's indictment in this case charged that Amend:

> did engage in a Continuing Criminal Enterprise in that she did violate Title 21, United States Code, Sections 841(a)(1), 846, 952, 960, and 963, which violations were part of a continuing series of violations of said statutes undertaken by said defendant in connection with at least five other persons, with respect to whom the defendant occupied a position of organizer, supervisor, or manager, and from which continuing series of violations the defendant obtained substantial income and resources....

This count clearly tracks the language of the statute.[4] Moreover, the government maintained an "open file" policy in this case and all information identifying the alleged participants was available to Amend and her counsel. Her counsel admits that prior to trial he obtained all necessary information from the government's files. Amend, therefore, suffered no prejudice from any alleged lack of specificity in this regard or from the denial of the bill of particulars.

In this same vein, Amend also alleges that the portion of the indictment relating to forfeiture was not sufficiently specific. The indictment charged that she obtained substantial income and resources from the continuing series of violations and that the United States was entitled to them by forfeiture. This language was sufficient to apprise Amend that she could be deprived of any interest in property acquired from drug-related profits. She asserts, however, that the indictment was insufficient to meet the specificity requirements of Rule 7(c)(2) of the Federal Rules of Criminal Procedure regarding the extent of interests or property subject to forfeiture. Her contention lacks merit with respect to the three assets which the jury specifically determined were forfeitable, the vessels, the "Dutch Treat" and the "Scandal," and real property in the form of "Renegade Ranch." We discuss, infra, the defects in the forfeiture of other assets. With respect to the forfeiture of the vessels and the ranch, we find that the government complied with Rule 7(c)(2), the essential purpose of which is to provide persons with adequate notice of the extent to which forfeiture is sought. *United States v. Grammatikos,* 633 F.2d 1013, 1024–25 (2d Cir.1980). This court has held that the indictment need not describe each item subject to forfeiture, but that "[t]his can be done in a bill of particulars." *United States v. Raimondo,* 721 F.2d 476, 477 (4th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984). Here, the government's "open file" policy provided Amend with access to all information in the government's possession and with adequate notice of its intention to seek forfeiture. This process gave her adequate notice of the extent to which forfeiture was

---

4. 21 U.S.C. § 848(b) states:
> For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—
> (1) he violated any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
> (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
> (B) from which such person obtains substantial income or resources.

sought in the same manner as a bill of particulars would have provided, and she suffered no prejudice as a result of the denial of the bill of particulars. Under the narrow circumstances of this case then, any error in denying her motion for a bill of particulars was harmless.

 Amend next asserts that the district court erred by allowing the use of evidence of her prior Mississippi conviction as proof of a predicate offense to the continuing criminal enterprise charge and by not granting her motion for judgment of acquittal. Amend maintains that the admissible evidence at trial failed to establish beyond a reasonable doubt that she occupied a position as organizer or supervisor with respect to a continuing series of violations of federal narcotics laws. Amend correctly asserts that a continuing series of violations requires a minimum of three such violations. *United States v. Ricks,* 776 F.2d 455, 463 & n. 13 (4th Cir.1985), *reh'g granted,* 784 F.2d 544 (1986). We find, however, that the evidence at Amend's trial was sufficient to establish her position as a manager or supervisor in at least three violations. In considering an attack on the sufficiency of the evidence underlying a conviction, this court must view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Jones,* 735 F.2d 785, 790 (4th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). Her challenge to her CCE conviction on the ground that the Mississippi conviction could not be considered a predicate offense fails because even without the evidence of that conviction, the evidence at trial was sufficient to prove her involvement in at least three violations, and that she occupied a managerial or supervisorial role with respect to at least five persons. *See United States v. Sinoto,* 723 F.2d 1250, 1261 (6th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984) (relationship requirement in a § 848 case is flexible; relationshp with five other individuals need not exist simultaneously). Specifically, the evidence showed her manage-

rial or supervisory role in: 1) the importation of 7,500 pounds of marijuana into Barnegat Bay, New Jersey in 1978 on the sailboat "Venganza"; 2) the importation of 7,000 pounds of marijuana into Port Royal Sound, South Carolina on June 3, 1979 on the sailboat "Scandal"; 3) the importation of 7,500 pounds of marijuana on June 12, 1979, on the sailboat "Serena"; and 4) the importation of 22,000 pounds of marijuana in South Carolina on January 20, 1980.

 There is likewise no merit to Amend's assertion that the trial court erroneously charged the jury as to the elements of the CCE offense. The court charged:

There are four elements which the prosecution must prove beyond a reasonable doubt in order to establish the guilt of the defendant as to the offense of continuing enterprise. These elements are, first, that the defendant participated in a continuing series of statutory violations. Two, that such participation was in concert with at least five other persons.

Three, that the position—the—(sic) that the defendant occupied a position as an organizer, or was in a supervisory position, or was in any other position of management. That the defendant obtained, and this is the fourth element. That the defendant obtained a substantial income from such enterprise.

Amend asserts that the instruction omitted the first element of the offense—that the defendant have committed a felony violation of the federal narcotics law, as part of a continuing series of violations, the second element. This instruction could have indicated more clearly that the government was required to prove that Amend had committed a felonious drug offense as part of a continuing series of violations. *Lurz,* 666 F.2d at 75. Such an instruction would have tracked 21 U.S.C. § 848 more closely and stated explicitly that the CCE offense contains five elements. The district court, however, simply combined the first two elements, and we do not think the jury could have been confused by this language which adequately describes all the elements of the crime. In sum, the instruction did

not lessen the government's burden of establishing a violation of 21 U.S.C. § 848. We also reject Amend's challenge to the district court's refusal to instruct the jury on aiding and abetting as a lesser included offense of the CCE count or to inform the jury as to the penalty for a § 848 conviction.

 There likewise is no merit to Amend's contention that 21 U.S.C. § 848 is unconstitutional either facially or as applied in this case. We do not find Amend's sentence unconstitutional under the Eighth Amendment. *See Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983). We also find that she was not denied a fair trial because of asserted bias on the part of the trial judge [5] and that there were no prejudicial evidentiary rulings by the district court.

 Finally, Amend argues that the government failed to offer any evidence that the assets subject to forfeiture were still in existence at the time of her conviction. She relies upon *United States v.*

*Alexander,* 741 F.2d 962 (7th Cir.1984) and *United States v. McManigal,* 708 F.2d 276 (7th Cir.), *vacated on other grounds,* 464 U.S. 979, 104 S.Ct. 419, 78 L.Ed.2d 355 *aff'd on remand,* 723 F.2d 580 (7th Cir. 1983). In *United States v. Ginsburg,* 773 F.2d 798, 802 (7th Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986), the Seventh Circuit, however, overruled the holding of these prior cases that racketeers' profits no longer in existence at time of conviction are not subject to forfeiture.[6]

### III.

Having found no merit to most of the allegations of error which Amend has presented to this court, we turn to an aspect of the trial which troubles us and conclude that the district court committed prejudicial error concerning this one phase of the forfeiture proceedings. The jury, in its special verdict form relating to forfeiture, found that Amend had acquired her ownership interest in one, the vessel "Dutch Treat," two, the vessel "Scandal,"

---

**5.** Amend raises several specific allegations in an attempt to show judicial bias. Some are ridiculous. For example, she complains that a reference to her lawyer's residence in Miami was evidence of bias. Equally pointless is her attack on the district court's refusal to allow her counsel to hear a portion of the questioning of a juror relating to the juror's marital problem. The court excused the juror because of that problem.

**6.** The Seventh Circuit cases involved the Racketeer Influenced and Corrupt Organizations (RICO) chapter of the Organized Crime Control Act of 1970, 18 U.S.C. § 1961 *et seq.* The RICO and CCE forfeiture provisions are similar. The Seventh Circuit described the rationale for its holding very ably:

> What the defendant's argument overlooks is the fact that a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women and song has profited from organized crime to the same extent as if he had put the money in his bank account. Every dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes. In order to truly separate the racketeer from his dishonest gains, therefore, the statute requires him to forfeit to the United States the

total mount of the proceeds of his racketeering activity, regardless of whether the specific dollars received from that activity are still in his possession.

*Ginsburg,* 773 F.2d at 802. In the Comprehensive Crime Control Act of 1984, Congress amended the forfeiture provisions relating to both the RICO and CCE statutes. Pub.L. No. 98–473, tit. II, §§ 302, 303, 98 Stat. 2040–51 (1984). A new section setting forth the forfeiture penalty applicable to 21 U.S.C. § 848, 21 U.S.C. § 853(c), provides that:

> All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Pub.L. No. 98–473, tit. II, 303, 98 Stat. 2045. The *Ginsburg* reasoning is persuasive, and the government need not have offered evidence that the forfeitable assets were still in existence at the time of Amend's conviction.

and three, certain real estate, "Renegade Ranch", as a result of having engaged in a continuing criminal enterprise. The jury in its fourth forfeiture finding also determined that she had acquired her ownership in

> [A]ll profits obtained arising from Carol Amend's participation in this enterprise and any interest, property and contractual rights of any kind affording a source of influence over this enterprise from engaging in a continuing criminal enterprise, in violation of Title 21, U.S.C. § 848, as alleged in Count 9 of the Indictment.

■ Rule 31(e) of the Federal Rules of Criminal Procedure provides for the procedural implementation of the RICO criminal forfeiture provision, 18 U.S.C. § 1963, and the CCE forfeiture provision, 21 U.S.C. §§ 848 and 853, and requires a special verdict.[7] *United States v. Hess,* 691 F.2d 188, 190 (4th Cir.1982); Fed.Crim.P. 31(e) advisory committee note; *see also* 3 C. Wright, Federal Practice and Procedure: Criminal 2d § 512, at 9–10; Pianin, *Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking,* 32 Am.U.L.Rev. 227, 236–42 (1982). Forfeiture under the CCE statute "is plainly a criminal matter as opposed to civil matter." *United States v. Garrett,* 727 F.2d 1003, 1012 (11th Cir.1984), *aff'd* — U.S. ——, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The actions are *in personam,* not *in rem. Id.* (quoting *United States v. Long,* 654 F.2d 911, 914 (3d Cir.1981)). A defendant is entitled to a jury trial on the issue of whether a particular asset is forfeitable. *Id.*

Following Amend's conviction, the district court instructed the jury that it had to determine whether Amend had acquired her ownership interests in certain specified assets, the two vessels and the ranch, as the result of having engaged in a continuing criminal enterprise. It also instructed the jury that it was to determine if "from engaging in a continuing criminal enterprise in violation of this kingpin [CCE] statute" she had acquired her interest in "all profits obtained, arising from [her] participation in this enterprise." The special jury verdict reflected these instructions.[8]

After the jury verdict, the district court entered an order of forfeiture and directed Amend to submit to an examination as a judgment debtor and to furnish the government with information pertaining to her property. Based on Amend's testimony, the district court issued two orders of forfeiture relating to a bank account in the Bahamas and to a purebred Arabian horse.

■ Although we find no reversible error in the procedure by which the jury considered and determined the forfeitability of the three assets specifically listed in its special verdict, and find the evidence sufficient to support their forfeiture, we vacate the district court's orders forfeiting the property identified in post-judgment proceedings under the authority of part four of the jury's special verdict which included the general catch-all category of assets. This final part of the special verdict is tautologous and provides no basis

---

7. Fed.R.Crim.P. 31(e) provides:
 If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any.
 Commentary on the procedural implementation of the special verdict in criminal forfeiture is sparse. For a general discussion of the forfeiture procedures, see Reed, *Criminal Forfeiture Under the Comprehensive Forfeiture Act of 1984: Raising the Stakes,* 22 Am.Crim.L.Rev. 747, 758–60 & n. 66, 769–77 (1985); Reed & Gill, *RICO Forfeitures, "Forfeitability Interest" and Procedural Due Process,* 62 N.C.L.Rev. 57, 95 (1983).

8. We, the Jury, find that defendant, Carol Amend, has acquired her ownership interests in:

| | |
|---|---|
| 1. "THE DUTCH TREAT" | Yes X No__ |
| 2. "THE SCANDAL" | Yes X No__ |
| 3. Lot 10, John E. Junkin Subdivision, also known as Renegade Ranch | Yes X No__ |
| 4. All profits obtained arising from Carol Amend's participation in this enterprise and any interest, property and contractual rights of any kind affording a source of influence over this enterprise | Yes X No__ |

from engaging in a continuing criminal enterprise, in violation of Title 21, U.S.C. § 848, as alleged in Count 9 of the Indictment.

upon which to forfeit assets under either 21 U.S.C. § 848(a)(2) (1982) (repealed 1984) or the newly enacted 21 U.S.C. § 853. *See, supra,* notes 1 and 5. By this part of the verdict, the jury found, in effect, that Amend had obtained her profits from and ownership interests in the enterprise as the result of having engaged in the enterprise. This catch-all form eviscerates the procedure proscribed for criminal forfeiture in Rule 31(e).

Having determined that this part of the verdict was improper, we do not need to decide the merits of Amend's challenge to the post-trial procedures which the government used to identify the assets in this category, including deposits in the Nassau, Bahamas bank and a purebred Arabian horse. The jury did not determine the forfeitability of the defendant's interest in these assets according to the requirements of Rule 31(e), and their forfeiture is invalid. We affirm the forfeiture of the "Dutch Treat," the "Scandal" and the "Renegade Ranch."

In view of the above, the judgment of the district court is affirmed in part, and reversed and vacated in part.

AFFIRMED IN PART, REVERSED AND VACATED IN PART.