829 F.2d 37
 23 Fed. R. Evid. Serv. 356
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel SCALLIO, a/k/a Santo C. Scallio, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patricia Lee SCALLIO, Defendant-Appellant.
 Nos. 86-5587, 86-5588
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1987.
Decided September 9, 1987.
 
 Laurel W. Marc-Charles (J. David Bogenschutz, Kay & Bogenschutz, P.A., on brief), for appellants.
 Barbara Slaymaker Sale, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief), for appellee.
 Before WIDENER, JAMES DICKSON PHILLIPS and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Defendants Samuel Scallio (Scallio) and Patricia Scallio (Mrs. Scallio), husband and wife, appeal convictions arising from cocaine trafficking activities. Scallio was convicted of engaging in a continuing criminal enterprise, 21 U.S.C.A. Sec. 848 (West Supp. 1987); conspiring to possess with intent to distribute and conspiring to distribute cocaine, 21 U.S.C.A. Sec. 846 (West 1981); using a telephone to facilitate the continuing criminal enterprise and the conspiracy, 21 U.S.C.A. Sec. 843(b) (West 1981); traveling in interstate commerce in aid of a racketeering enterprise, 18 U.S.C.A. Sec. 1952(a)(2) (West Supp. 1987); and intimidating a witness, 18 U.S.C.A. Sec. 1512(b) (West Supp. 1987). Mrs. Scallio was convicted of the only charge against her, conspiring to possess with intent to distribute and conspiring to distribute cocaine. 21 U.S.C.A. Sec. 846 (West 1981). We affirm.
 
 I.
 
 2
 Viewed in the light most favorable to the government, the evidence showed that Scallio reaped large profits from transactions involving substantial quantities of cocaine. A search of the Scallios' residence in 1984 produced high sensitivity scales, a freebasing kit, a money counting machine, drug formulas detailing different kinds of 'cut' used in diluting drugs, several guns, a vial containing cocaine residue, and a drug transaction ledger.
 
 
 3
 The drug transaction ledger, as interpreted by an expert for the government, reflected purchases and sales of cocaine beginning May 24, 1982 and continuing through December 1983. The ledger columns showed the quantity purchased, the purchase price, the cost of cutting materials, the number of separate packages in which the cocaine was placed, and the sales price. Several entries also included a hotbox readout indicating the melting point of the cocaine, which rises as the purity of the sample being tested increases.
 
 
 4
 The ledger detailed 46 purchases totaling 160 punds of cocaine. From these transactions Scallio grossed $6,948,400.00, and received a net profit of $2,478,020.00.
 
 II.
 
 5
 Scallio attacks his continuing criminal enterprise conviction on several grounds. He first argues that the indictment failed to adequately set forth the elements of the offense in order to fairly apprise him of the charge against him.
 
 
 6
 In order to successfully establish that a defendant engaged in a continuing criminal enterprise, the government must prove that he (1) committed a felony violation of certain federal controlled substances laws (2) as part of a continuing series of controlled substances violations (3) in concert with five or more persons (4) for whom the defendant was an organizer, supervisor or manager and (5) from which he derived substantial income or resources. 21 U.S.C.A. Sec. 848(d) (West Supp. 1987); United States v. Lurz, 666 F.2d 69, 75 (4th Cir. 1981), cert. denied, 455 U.S. 1005, 457 U.S. 1136, 459 U.S. 843 (1982). The instant indictment charged that Scallio did:
 
 
 7
 [V]iolate Title 21, United States Code, Sections 846 and 841(a)(1) as alleged in Counts II and V of this Indictment, which are incorporated herein by reference, which violations are part of a continuing series of violations of Subchapter I of the Comprehensive Drug Abuse Control Act of 1970 . . . undertaken by the defendant in concert with at least five other persons with respect to whom the defendant occupied a position of organizer, supervisor and manager, and from which continuing series of violations the defendant obtained substantial income and resources, . . . 21 U.S.C. Section 848.
 
 
 8
 The indictment adhered to the contours of the statute and plainly set forth the elements of the offense. It has been 'consistently held that it is sufficient in a continuing criminal enterprise charge if the indictment tracks the statute.' United States v. Amend, 791 F.2d 1120, 1125 (4th Cir. 1986), cert. denied, 93 L.Ed.2d 353 (1986) (citations omitted). An indictment need not specify the five or more individuals who were managed or supervised, Amend, id., and likewise it need not specify the offenses which will be utilized to establish the second element, the continuing series of controlled substances violations. Additionally, since Scallio's defense was based on his denial of any involvement with drugs, he was not prejudiced by the claimed lack of specificity in the indictment. Consequently, Scallio's attack on the form of the indictment is rejected.
 
 
 9
 Scallio next contends that the evidence was insufficient to support a finding that he organized, supervised or otherwise managed at least five persons. In addressing this contention, the evidence is viewed in the light most favorable to the government as we decide whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. MacDougall, 790 F.2d 1135, 1151 (4th Cir. 1986).
 
 
 10
 The government maintains that the requisite relationship was established with respect to Butch Phillips, Mrs. Scallio, and Pete, Jackie and Billy Grimes. It was not required to show that the relationships existed at the same time, that the five persons acted in concert, or that the same type of relationship existed between the supervisor and each of the five persons. United States v. Dickey, 736 F.2d 571, 587 (10th Cir. 1987), cert. denied, 469 U.S. 1188 (1985); United States v. Phillips, 664 F.2d 971, 1013 (5th Cir. 1981), cert. denied, 457 U.S. 1136, 459 U.S. 906 (1982).
 
 
 11
 The government claims Butch Phillips served as Scallio's lieutenant, taking charge of Maryland operations after Scallio moved to Alabama in 1984. It relies on several telephone conversations between Phillips and Scallio, conversations which Scallio urges were at best coded conversations relating to the general state of the drug business and the whereabouts and legal problems of mutual acquaintances. The government, however, maintains that Phillips was reporting through coded calls on various retail drug outlets and their operators. It also points out that Phillips often referred to Scallio as 'Boss,' and that he did not use that term in his conversations with other persons. Because the jury could reasonably find the calls were as the government contends, the evidence was sufficient to support the finding that Scallio was an organizer, supervisor or manager of Phillips.
 
 
 12
 The facts surrounding Mrs. Scallio's involvement with her husband's activities will be addressed when we review her contentions on appeal. They are sufficient to support a finding that she too was organized, supervised or managed by her husband.
 
 
 13
 Scallio argues that because Pete Grimes generally gave day-to-day instructions to Pete's wife Jackie and his brother Billy, he cannot be considered an organizer, supervisor or manager of Jackie or Billy. However, both Jackie and Billy received money from and delivered cocaine to Scallio. The jury could reasonably find Scallio was an organizer, supervisor or manager of those persons to whom he was giving large sums of cash with which to purchase cocaine. Accordingly, Scallio's contention that the evidence was insufficient to show that he organized, supervised or managed at least five persons is rejected.
 
 
 14
 Scallio's final attack on the continuing criminal enterprise conviction stems from the district court's charge concerning the first element of the offense, the one predicate felony violation of the federal controlled substances laws. Scallio failed to make any objection in the lower court to the instructions about which he now complains.
 
 
 15
 In setting forth the first element of the offense, the district court charged that the government must prove beyond a reasonable doubt:
 
 
 16
 First: That the defendant Samuel Scallio committed at least one of the violations of the federal narcotics laws specified in Counts II, III, and V of the indictment. These counts, as you have heard, charge a conspiracy to violate the federal narcotics laws and specific substantive offenses enumerated in the federal narcotics laws. Each of the overt acts described in the conspiracy count of the indictment alleges a felony violation of the federal laws.
 
 
 17
 Scallio asserts it was error to charge that Count III or the overt acts could satisfy the first element. While Count III of the indictment does properly set forth a felony violation of the federal controlled substances laws, the continuing criminal enterprise count of the indictment specified only Counts II or V as the predicate felony violation of the federal laws. Scallio also argues that some of the specified overt acts do not involve violations of the federal controlled substances laws and therefore were improperly included in the charge on the first element of the offense.
 
 
 18
 Due to the absence of an objection at trial, the claim that it was error to charge that Count III or the overt acts could qualify as the predicate felony violation of the federal controlled substances laws is reviewable only if it constituted plain error. Fed. R. Crim. P. 52(b). To establish that there was plain error, it must be shown that the claimed error 'seriously affected 'substantial rights,' [and] that it had an unfair prejudicial impact on the jury's deliberations.' United States v. Young, 470 U.S. 1, 16-17 n.14 (1985). Here Scallio was convicted on Count II, the conspiracy count. This conviction satisfied the predicate felony violation element of the offense. Thus, Scallio suffered no unfair prejudicial impact from the error. Consequently, the error did not rise to the level of plain error.
 
 
 19
 Scallio also argues that the charge characterizing the overt acts as felony violations tainted the charge on the second element of the offense, allowing the jury to consider nonnarcotic offenses as part of the continuing series of controlled substances violations. However, the district court properly charged the jury on the second element of the offense:
 
 
 20
 Second: If you find that the defendant Samuel Scallio committed at least one of the violations of the federal narcotics laws specified in Count II, III and V of the indictment, the next element that is the violation must be found to be a part of a continuing series of violations of the federal narcotics laws by the defendant Samuel Scallio.
 
 
 21
 . . . .
 
 
 22
 In regard to the second element of the offense, the term 'series' generally means 'three or more' and the term continuing means 'enduring' existing for a definite period or intended to cover or apply to successive, similar occurrences.
 
 
 23
 Thus, you must find beyond a reasonable doubt that the defendant Samuel Scallio committed three or more successive violations of the federal narcotics laws within the period of time set forth in the indictment and with a single or substantially similar purpose.
 
 
 24
 The mischaracterization of the overt acts in the charge on the first element of the offense cannot be incorporated into the charge concerning the second element and then labeled 'plain error.' The second element was charged correctly. Moreover, evidence was produced concerning numerous violations of the controlled substances laws, and the jury clearly rejected Scallio's all-or-nothing defense that he was an extremely successful used car dealer, not a drug dealer.
 
 III.
 
 25
 Both Scallio and his wife contend the district court usurped defense counsel's role by advising them concerning their fifth amendment rights. Mrs. Scallio, who did not testify, also asserts that the scope of cross-examination and the spousal privilege were not adequately explained to her by the court. Scallio additionally claims his fifth amendment rights were violated when he was questioned concerning his tax returns.
 
 
 26
 These three matters were not brought to the attention of the district court. Moreover, defense counsel expressly requested the court to advise his clients concerning their fifth amendment rights. It was not error for the court to fulfill this request. If counsel believed his clients needed additional information, he could have provided it himself or requested further assistance from the court. No plain error was committed by the district court in failing to sua sponte provide more information. Scallio's argument that although neither he nor his counsel raised such an objection, the court had an obligation to interpose a fifth amendment objection to inquiries concerning his tax returns is without merit.
 
 IV.
 
 27
 Mrs. Scallio contends the evidence was insufficient to support her conviction on the conspiracy count, the only count in which she was named. She also asserts her motion for a severance was erroneously denied, and her tax returns were improperly admitted during rebuttal.
 
 
 28
 Mrs. Scallio claims the evidence failed to show she had any knowledge of the illegal dealings of her husband. However, the evidence, viewed in the light most favorable to the government, soundly defeats this argument. The evidence showed she purchased materials with money orders in her name from the 'High Ole Times' Company, which sold products suitable for diluting cocaine. The evidence also showed that as she and her husband were preparing to move from Maryland to Alabama in 1984, she told Jackie Grimes the move was attributable to too much 'heat' in Maryland. Upon arriving in Alabama, Mrs. Scallio purchased a $300,000.00 home in her name with cash. All other substantial assets of the couple were also titled in her name.
 
 
 29
 Furthermore, in December 1984, when Scallio flew to Maryland, the ticket was purchased with cash in the name of Michael Higdon, Mrs. Scallio's brother. Following questioning of Higdon by the authorities, he called Mrs. Scallio and inquired about the ticket. She told him that it was to have been a Christmas gift for him that he never received.
 
 
 30
 Finally, when the Scallios' home was searched, Mrs. Scallio's purse contained a loaded handgun and a slip of paper with the name, address and physical description of Nick Dezes and a list of automobiles he drove. Although Scallio had not personally engaged in any transactions with Dezes, it was Dezes' cooperation with authorities which triggered the chain of events leading to the apprehension of the Scallios. Thus, Scallio had a motive for revenge against Dezes, and it is relevant that Mrs. Scallio had custody of the information necessary to locate and identify him.
 
 
 31
 Consequently, the evidence concerning Mrs. Scallio extended beyond the portrayal of a spouse who was merely present and innocently enjoyed the fruits of her husband's crime. The government's case was amply sufficient to support her conviction on the conspiracy charge.
 
 
 32
 Further there was no abuse of discretion in the denial of her motion for severance. While her counsel argued below that in testifying she would exculpate herself but incriminate her husband, there was no proffer of what her testimony would be. Absent such a showing, the district court did not abuse its discretion in denying the motion.
 
 
 33
 There was also no abuse of discretion in admitting Mrs. Scallio's tax returns on rebuttal. At a minimum, the returns were relevant to show no substantial profits arising from the sale of any of the assets titled in her name. Moreover, she has shown no prejudice from the introduction of the tax return.
 
 V.
 
 34
 Finally, the Scallios assert that the district court improperly excluded testimony from John Huber and government agent Athas. While the testimony should have been allowed, the error was harmless.
 
 
 35
 The defense called Mr. Huber to testify that Jackie Grimes, one of the key government witnesses, had a poor reputation for truthfulness. The district court declined to allow the witness to testify, holding Federal Rule of Evidence 608 permitted such testimony as to the reputation for truthfulness only a defendant, not a witness. The district court erred because the application of Rule 608 is not limited to defendants. The Scallios, relying on United States v. Davis, 639 F.2d 239 (5th Cir. 1981), claim reversal is mandated. However, Davis is distinguishable from this case. In Davis there was only one key witness and he was subject to minimal impeachment. In the instant case, Jackie Grimes was not the only witness linking Scallio to drug transactions. Moreover, her credibility was extensively challenged by reference to her prior record and other matters. Consequently, the exclusion of opinion testimony concerning her reputation for truthfulness was harmless.
 
 
 36
 The exclusion of certain testimony from Agent Athas was also harmless error. At best his testimony would have shown that Pete Grimes at one time made an exculpatory statement concerning Scallio. After carefully reviewing the entire record and considering the evidence against Scallio, the exclusion of this testimony does not warrant reversal.
 
 
 37
 AFFIRMED.