927 F.2d 597
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Chukwuma IZUOGU, Defendant-Appellant.
 Nos. 90-5778, 89-5706.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 8, 1991.
Decided Feb. 25, 1991.
As Amended June 3, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CR-89-279-JH).
 Emmanuel D. Akpan, Baird & Akpan, Washington, D.C., for appellant.
 William Warren Hamel, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Robert M. Thomas, Jr., Assistant United States Attorney, Veronica M. Clarke, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Michael Izuogu, the appellant, a citizen of Nigeria, was convicted of one count of hampering deportation proceedings in violation of 8 U.S.C. Sec. 1252(e) and of aiding and abetting such conduct in violation of 18 U.S.C. Sec. 2. The jury found that Izuogu had hampered the government's efforts by refusing to turn over his passport and by refusing to cooperate in obtaining an emergency travel document at the Nigerian Embassy. Izuogu has appealed the conviction, claiming that he was under no legal duty to turn over his passport and could not have done so in any event because he did not have the document in his custody or control.
 
 
 2
 Yet a review of the record reveals a story with quite a different twist. It contains substantial evidence of Izuogu's knowing refusal to turn over his passport in an effort to stall his deportation and of his refusal to cooperate with the Immigration and Naturalization Service (INS) in the Agency's efforts to obtain an emergency travel document for him at the Nigerian Embassy.
 
 
 3
 In April, 1989, Izuogu was ordered deported from the United States because he had been convicted of a crime of moral turpitude (making a false statement in application for a passport). In order to effect Izuogu's deportation back to Nigeria pursuant to the order of deportation, the INS required the defendant's passport or, in the alternative, an emergency travel document from the Nigerian Embassy.
 
 
 4
 Prior to the order for his deportation, Izuogu, in April 1989, had shown his Nigerian passport to Immigration Inspector Elaine Young for purposes of an unrelated immigration proceeding.
 
 
 5
 When the INS agents arrested Izuogu in June of 1989, pursuant to the order of deportation, he told one of the arresting agents that his passport was in his apartment. The INS advised him that his wife could bring the passport to the detention center where Izuogu was being held. On June 13, 1989, Izuogu was in the offices of the INS in Baltimore with his attorney. At that time Immigration Officer David Kormanick asked Izuogu if he would be turning over his passport to the INS. Izuogu replied that he wanted to discuss the matter in private with his attorney. He then met privately with his attorney and stated to Officer Kormanick that he would in fact turn over his passport. Officer Kormanick then made it clear to Izuogu that in case he did not turn over his passport, the INS had already made arrangements with the Nigerian Embassy to interview Izuogu in Washington, D.C. in order to obtain an emergency travel document to effect his deportation. Officer Kormanick told Izuogu that if the passport was not provided by the next day, he would be transported to the Nigerian Embassy.
 
 
 6
 On June 14, 1989, Izuogu had not turned over his passport. Consequently, the INS transported him to the Nigerian Embassy in Washington, D.C. to obtain an emergency travel document. En route to the embassy, Izuogu became upset and told the INS agents accompanying him that he would not be interviewed, that he would not sign anything, and that he would not cooperate. While waiting to enter the embassy, Izuogu informed Immigration Officer Joseph Glorioso that he was refusing to turn over his passport in order to stall for time. Once inside the embassy, Izuogu refused to sign-in as required by the embassy security guards.
 
 
 7
 During his interview with the Consular Officer at the Nigerian Embassy, Izuogu contended that he had been mistreated by the INS and that the INS was attempting to get rid of him and not allow him to complete the appeal of his immigration case. In fact, there was no appeal of his immigration case pending at that time.*
 
 
 8
 As a result of Izuogu's behavior, the INS was unable to obtain a Nigerian travel document from the Nigerian Embassy. When Izuogu was transported back to Baltimore, Officer Kormanick gave him a form which warned of enumerated violations which might be committed in the area involved, including the penalties for failure to comply with the statute. Izuogu read the form and Officer Kormanick explained it to him. Izuogu then said that he wanted to discuss the form with his attorney. Izuogu telephoned his attorney from the detention center and then told the INS agents that he would not turn over his passport. When Officer Kormanick explained to him that if he did not turn over his passport the INS would prosecute him criminally, he persisted in his refusal to turn over the passport. The INS was consequently deterred from deporting Izuogu.
 
 
 9
 Izuogu, on appeal, first has contended that insufficient evidence was adduced at trial to support his conviction, beginning by claiming that he was convicted of failing to surrender his passport on June 13 and 14, 1989, when in fact the United States government had no statutory right to demand that the passport be turned over. Thus, Izuogu has surmised, if it is not a crime not to turn over one's passport, he lacked the specific intent necessary to commit any crime.
 
 
 10
 Izuogu has made the further contention that he did not have his passport on his person at that time nor knew where it was, a second form of proof that he lacked the specific intent to commit the crime of which he was convicted.
 
 
 11
 However, Izuogu was convicted of the crime of hampering deportation, not of failing to turn over his passport. The question properly submitted to the jury was whether the totality of his conduct hampered and impeded his deportation from the United States. We must determine whether the evidence and all permissible inferences which may be drawn therefrom, when considered in a light most favorable to the government, warranted the finding by the jury of guilt beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir.1982). That evidence was amply sufficient to demonstrate that Izuogu had access to his passport and willfully withheld it, knowing that such conduct would impede his deportation.
 
 
 12
 Izuogu first submitted a certified copy of his passport to Elaine Young of the INS in February, 1989. At the time of his initial arrest on June 7, 1989, Izuogu stated to Agent Joseph Mangiulli that his passport was in his apartment. On June 13, 1989, in the presence of his attorney, Izuogu agreed to turn over his passport to Agent David Kormanick of the INS. He later changed his mind, informing Kormanick that he would not turn over his passport, again implicitly acknowledging that he had the document in his possession, custody, or control. Izuogu further stated to Agent Joseph Glorioso of the INS that he was deliberately withholding his passport to stall for time, admitting that what he was doing was wrong but that "he knew what he was doing." It was only at trial, for the first time, that Izuogu asserted or suggested that he did not have or could not find his passport.
 
 
 13
 While conceding that the language of the indictment handed down against him tracked the language of the statute, 8 U.S.C. 1252(e), Izuogu has maintained that the indictment was not constitutionally sufficient because it failed to state specifically what action he took to prevent and hamper his deportation and thus failed to apprise him of the specific charge for which he would have to prepare his defense.
 
 
 14
 Federal Rule of Criminal Procedure 7(c)(1) directs that an indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Fourth Circuit's test for sufficiency is whether the indictment sets forth the essential elements of the offense and sufficiently apprises the appellant of the charge so that the appellant may be able to prepare a defense and may be able to plead a former conviction or acquittal in the event of a subsequent charge for a similar offense. Nye v. United States, 137 F.2d 73, 75-76 (4th Cir.), cert. denied, 320 U.S. 755 (1943). As a general rule, indictments are sufficient if they track the language of the statute and state the time and place of the offense in approximate terms. Hagner v. United States, 285 U.S. 427, 431 (1932); United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir.1973), cert. denied, 415 U.S. 985 (1974). We have upheld against a vagueness challenge indictments that did not specify the acts in violation of the cited statutes. See United States v. American Waste Fibers Co., 809 F.2d 1044, 1046-47 (4th Cir.1987); United States v. Amend, 791 F.2d 1120, 1125 (4th Cir.1986); United States v. Kelly, 462 F.2d 372, 374 (4th Cir.1972).
 
 
 15
 Such precedent, coupled with ample evidence of Izuogu's refusal to produce his passport after being presented with a form which enumerated 8 U.S.C. Sec. 1252(e) and even after Izuogu discussed the form with his attorney, provides ample support for the proposition that the language of the indictment gave Izuogu due notice of the charge against him and was thus legally sufficient.
 
 Accordingly, the judgment is
 
 16
 AFFIRMED.
 
 
 
 *
 At oral argument, counsel for Izuogu seemed insistent on the fact that such an appeal was pending at the time Izuogu was taken to the Nigerian Embassy. When pressed on the matter, however, counsel could not cite to the record in support of his position. Counsel was then invited to submit a letter to the Court to substantiate his claim. No such letter has ever been received