881 F.2d 1527
 UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Eugene STAGGS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles David TEAFATILLER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peggy Savage TEAFATILLER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank E. GABRIEL, Defendant-Appellant.
 Nos. 88-1275, 88-1469, 88-1471 and 88-1473.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 7, 1989.
 
 Mervyn Hamburg, Atty., Appellate Div., Dept. of Justice, Washington, D.C. (Roger Hilfiger, U.S. Atty., and Sheldon J. Sperling, Asst. U.S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.
 Emmett Colvin (Richard F. Aguire with him on the brief), Dallas, Tex., for defendants-appellants.
 Before HOLLOWAY, Chief Judge, McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY and EBEL, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 Appellants were convicted by a jury on a variety of federal drug and drug-related charges arising out of an alleged operation to produce amphetamine, a schedule II controlled substance. See 21 C.F.R. Sec. 1308.12(d) (1987). Specifically, appellants Donald Eugene Staggs (Staggs), Charles David "Rusty" Teafatiller (Teafatiller), Peggy Savage Teafatiller, and Frank E. Gabriel (Gabriel), were each convicted of conspiring to manufacture, possess with intent to distribute, and distribute amphetamine, in violation of 21 U.S.C. Secs. 846 and 841(a)(1).[1] Teafatiller and Staggs also were convicted of engaging in a continuing criminal enterprise (CCE), contrary to 21 U.S.C. Sec. 848.[2] The jury further convicted both Gabriel and Staggs on firearms charges; Gabriel of possessing an unregistered automatic weapon in violation of 26 U.S.C. Sec. 5861(d), and Staggs of possessing a firearm shipped or transported in interstate commerce after a felony conviction, contrary to 18 U.S.C. Sec. 922(g)(1). Finally, Teafatiller was convicted of attempted tax evasion as prohibited by 26 U.S.C. Sec. 7201, and Teafatiller and his wife Peggy together were convicted of conspiring to defraud the United States by obstructing the collection of the revenue, in contravention of 18 U.S.C. Sec. 371. Our jurisdiction of this direct appeal from the judgment of conviction arises under 28 U.S.C. Sec. 1291.
 
 
 2
 Appellants assert six grounds of error on appeal. First, Teafatiller and Staggs challenge the indictment, claiming that the continuing criminal enterprise charges in counts two and three failed to allege three felony violations comprising the "series of violations" required by the CCE statute. Second, Teafatiller and Staggs argue that their respective conspiracy convictions, being lesser included offenses of the CCE offense, should be vacated. Third, while not seeking reversal on this point, Teafatiller seeks correction of the judgment and commitment order filed after trial because the sentence reflected therein differs from that orally rendered by the trial judge. Fourth, all appellants claim the case should be remanded for a hearing to determine whether the government acted outrageously by seeking the cooperation of an attorney who, according to appellants, had formerly represented them. Fifth, Gabriel argues that the testimony of Sharon Gabriel was admitted in violation of the marital privilege. Lastly, Gabriel contends that the evidence is insufficient to support his conviction on the conspiracy count.
 
 
 3
 This case was assigned originally to a three-judge panel for determination of these issues. Prior to the issuance of the proposed panel opinion, a majority of the active judges of the Tenth Circuit voted sua sponte to hear the first of the above-listed issues, regarding the sufficiency of the CCE indictments of Teafatiller and Staggs, before the en banc court. By order dated March 29, 1989, the court defined the issue for en banc consideration as follows:
 
 
 4
 Whether a continuing criminal enterprise indictment which tracks the language of the statute and contains three violations underlying the series in another count of the indictment is sufficient to charge a continuing criminal enterprise offense under 21 U.S.C. Sec. 848, consistent with the requirements for an indictment under the fifth and sixth amendments of the Constitution.
 
 
 5
 Given this posture, we will address this appeal in two opinions, filed this day: the first, herein, before the en banc court, considering the sufficiency of the CCE indictments; and the second, before the original three-judge panel, considering the remaining issues. See 881 F.2d 1546 (10th Cir.1989).
 
 
 6
 Appellants Teafatiller and Staggs were charged in a superseding indictment, counts two and three respectively, with engaging in a continuing criminal enterprise, proscribed at 21 U.S.C. Sec. 848. The essential elements of the CCE offense include the following:
 
 
 7
 (1) a continuing series of violations of the Controlled Substances Act of 1970, 21 U.S.C. et seq., (2) the violations were undertaken in concert with five or more other persons with respect to whom the accused acted as organizer, supervisor or manager, and (3) from which the accused obtained substantial income or resources.
 
 
 8
 United States v. Hall, 843 F.2d 408, 410 (10th Cir.1988) (quoting United States v. Dickey, 736 F.2d 571, 596-97 (10th Cir.1984), cert. denied, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985)). Courts construing the first element, the only one at issue here, have generally agreed that the "continuing series of violations" specified by the CCE statute requires proof of three or more drug violations in order to support a CCE conviction. United States v. Apodaca, 843 F.2d 421, 427 (10th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).
 
 
 9
 The appellants were charged, in the language of the CCE statute, with engaging in "a continuing series of violations," the indictment specifying additionally that Staggs and Teafatiller had "repeatedly violated Title 21, United States Code, Section 841(a)(1) and other provisions of Title 21, regarding amphetamine, a Schedule II, stimulant controlled substance.[3] No underlying violations were specified in the CCE counts, but at least three violations of Title 21 were alleged with regard to each appellant in count one of the indictment, the conspiracy count.[4] Both Teafatiller, rec. vol. I, doc. 2, and Staggs, rec. vol. I, doc. 12, filed motions to dismiss the indictment, which were denied. Rec. vol. I, doc. 18. On appeal, Teafatiller and Staggs do not contend that three violations were not charged and proved. Neither do appellants contend that any evidence of uncharged violations was introduced at trial in support of the CCE counts. Rather, they argue that the indictment was insufficient with regard to the CCE counts in that those counts failed either to list the underlying violations or to specifically incorporate by reference the violations charged in count one.
 
 
 10
 Generally, an indictment is sufficient if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend, and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense. Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); United States v. Young, 862 F.2d 815, 819 (10th Cir.1988). Because appellants could plead the entire record as a bar to future CCE or conspiracy charges based on the predicate acts charged in the indictment or otherwise considered by the jury, appellants are adequately protected from double jeopardy, see Apodaca, 843 F.2d at 430 n. 3, and the central issue here, as appellants conceded at oral argument, involves the notice function of this indictment. Teafatiller and Staggs contend that by omitting from the CCE counts the underlying violations, the indictment did not articulate the essential facts constituting the offense as required by Fed.R.Crim.P. 7(c)(1). The practical result, according to appellants, was that the indictment failed to provide them the notice necessary to prepare their defense. We disagree.
 
 
 11
 An indictment is generally sufficient to overcome constitutional concerns if it sets forth the words of the statute, as long as the statute itself adequately states the elements of the offense. Hamling, 418 U.S. at 117, 94 S.Ct. at 2907; United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir.1988). Each of the other circuits that has considered the sufficiency of a CCE indictment either has held generally that a CCE indictment is sufficient if it tracks the language of the statute, or specifically that an indictment need not allege the three violations that underlie the "continuing series" element. United States v. Alvarez-Moreno, 874 F.2d 1402, 1408, 1410-11 (11th Cir.1989) (CCE indictment sufficient when alleging offense in language of statute); United States v. Amend, 791 F.2d 1120, 1125 (4th Cir.) (indictment sufficient although not alleging five individuals with whom defendant acted in concert), cert. denied, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); United States v. Sterling, 742 F.2d 521, 526 (9th Cir.1984) (no legal requirement that specific violations underlying series be listed in indictment), cert. denied, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); United States v. Johnson, 575 F.2d 1347, 1356 (5th Cir.1978) (indictment sufficient because it charged in the words of the statute that the defendant and others had participated in a continuing criminal enterprise), cert. denied, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979); United States v. Sperling, 506 F.2d 1323, 1344 (2d Cir.1974) (indictment adequate for preparation of defense and avoidance of double jeopardy although not listing five individuals with whom defendant acted in concert or violations underlying the charged series), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).
 
 
 12
 Following oral argument before the en banc court, the court first considered whether tracking the language of the statute with regard to the "continuing series of violations" element was sufficient to meet the constitutional requirements of an indictment. After discussion, the court was evenly divided on that issue; therefore, we reach no conclusion about the sufficiency of an indictment that does no more than track the language of the CCE statute. We do hold, however, that a CCE indictment is sufficient where, as here, the CCE counts charge appellants in the language of the statute, and the indictment additionally alleges at least three violations in another count or counts. See United States v. Moya-Gomez, 860 F.2d 706, 752 (7th Cir.1988) (defendant put on actual notice by violations listed in other counts; indictment held sufficient), cert. denied, --- U.S. ----, 109 S.Ct. 3221, 106 L.Ed.2d 571; United States v. Becton, 751 F.2d 250, 256-57 (8th Cir.1984) (same), cert. denied, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).
 
 
 13
 Even had we held that an indictment must allege the violations underlying the continuing series element, this indictment would be sufficient because here, the CCE count need not have explicitly incorporated by reference violations listed elsewhere in the indictment. The Seventh and Eighth Circuits have considered the precise factual circumstance before us, from a similar legal perspective: While neither adopting nor dispensing with a rule requiring a CCE indictment to allege at least three violations, both courts considered the indictment sufficient where such violations were alleged in other counts of the indictments. Although recognizing the prosecutor's ability to avoid the issue by listing the violations in the CCE count, the courts in Moya-Gomez and Becton both held that the indictments afforded adequate notice when read as a whole. See Moya-Gomez, 860 F.2d at 752; Becton, 751 F.2d at 256-57.
 
 
 14
 Similarly, appellants complained neither at trial nor on appeal that the proof of the violations contained in count one surprised them, thereby hampering the preparation of their defense. Because the allegations in count one afforded appellants actual notice regarding the violations proved at trial in support of the CCE charge, their argument essentially seeks reversal for reasons other than a failure of notice. We approve of the approach in Moya-Gomez and Becton: Because the essential issue is whether the appellants received notice adequate for the preparation of their defense, it would be both anomalous and hypertechnical to conclude that, even though the indictment provided such notice, the notice function was not served because of the failure to explicitly incorporate by reference count one, containing the charged violations. See United States v. Esposito, 771 F.2d 283, 288-89 (7th Cir.1985) (Travel Act indictment held sufficient where indictment read as a whole put defendants on notice of element not alleged in Travel Act counts; dismissal "would be an extreme example of technicality"), cert. denied, 475 U.S. 1011, 106 S.Ct. 1187, 89 L.Ed.2d 302 (1986). But see, e.g., United States v. Hooker, 841 F.2d 1225, 1231 (4th Cir.1988) (en banc) (element of offense missing from one count cannot be read into that count from another unless explicitly incorporated by reference).
 
 
 15
 This result is supported not only by the factually similar cases from other circuits, but also by the weight of analogous precedent from this circuit. We have said that in evaluating the sufficiency of the indictment, "the entire document may be considered." United States v. Mobile Materials, Inc., 871 F.2d 902, 906 (10th Cir.1989) (per curiam); United States v. Metropolitan Enterprises, Inc., 728 F.2d 444, 453 (10th Cir.1984); Mobile Materials, 871 F.2d at 919-20 (McKay, J., dissenting) ("we look first to the charging statement and related provisions of count one, then to the remaining paragraphs of that count, and finally to all 'four corners' of the indictment").
 
 
 16
 Particularly instructive here is United States v. Neal, 692 F.2d 1296 (10th Cir.1982), which addressed the sufficiency of an indictment charging the defendant in three counts, respectively, with 1) using extortionate means to collect an extension of credit, 2) possessing an unregistered firearm, and 3) distributing cocaine. The defendant challenged count one, arguing that it did not contain sufficient specificity regarding the allegedly extortionate threats. In evaluating the sufficiency of count one, which did not incorporate by reference any other counts, see id. at 1301 n. 4, we considered "it proper to note that the nature of the charge and the evidence before the grand jury are further revealed by Counts II and III of the indictment." Id. at 1302. We upheld the indictment, stating that it "was not fatally defective in view of the other details alleged, which we have noted."[5] Id. at 1303. Given this precedent, and keeping in mind that in interpreting an indictment, we are "governed by practical rather than technical considerations," United States v. Phillips, 869 F.2d 1361, 1364 (10th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989), we will not require explicit incorporation by reference under the facts of this case.[6]
 
 
 17
 Despite our previous holdings, the dissent cites other circuits for the proposition that "precedent solidly precludes incorporation except by express reference." Dissent, op. at 1537. Significantly, however, three of the nine circuits cited by the dissent would uphold this indictment on its face and never reach that issue, as those circuits have concluded that a CCE indictment tracking the language of the statute is sufficient. Amend, 791 F.2d at 1125 (4th Cir.); Johnson, 575 F.2d at 1356 (5th Cir.); Sterling, 742 F.2d at 526 (9th Cir.). The other six circuits cited by the dissent have not addressed the sufficiency of an indictment which tracks the language of the CCE statute. Thus, as noted earlier, the decisions of the Fourth, Fifth, and Ninth Circuits fall into line with those other circuits which have previously considered the CCE indictment issue, see Alvarez-Moreno, 874 F.2d at 1402 (11th Cir.); Sperling, 506 F.2d at 1344 (2d Cir.), "solid" precedent that the dissent is not nearly so enamored of in its Part II. See Dissent, op. at 1540, 1544 n. 6. Further, none of the other six express incorporation by reference cases cited by the dissent discusses how that rule of express incorporation relates to the constitutional protections afforded by good indictments. To rely on those cases rather than a considered analysis of such protections would advance a technical evaluation of indictments, expressly disfavored in modern criminal pleading, without necessarily promoting the constitutional rights of criminal defendants. Thus we turn to the dissent's discussion of those rights.[7]
 
 
 18
 The portion of the dissent dealing directly with the substantive goals of indictments relies on the decision of the Supreme Court in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In particular, the dissent echoes the fear expressed in Russell that "a defendant [could] be convicted on the basis of facts not found by, or perhaps not even presented to, the grand jury." Id. at 770, 82 S.Ct. at 1050. While the dissent criticizes what it perceives as our failure to address the Russell concern with the grand jury function, the fear articulated in Russell simply does not manifest itself in this case, where the facts at issue were both presented to and found by the grand jury.[8] Notably, our approach to this indictment is mirrored by that of the defendants who have never suggested, either at trial or on appeal, that their right to be tried on charges presented to a grand jury has been prejudiced; they have instead challenged the indictment on the ground that it hampered the preparation of their defense. Additionally, our prior decisions where we have considered the entire indictment in evaluating the sufficiency of a count have explicitly considered the Russell concern with the grand jury function, and have found that function not to be adversely implicated by considering other counts not expressly incorporated by reference. See Neal, 692 F.2d at 1302 & n. 5 ("We also feel it proper to note that the nature of the charge and the evidence before the grand jury are further revealed by Counts II and III of the indictment.") (emphasis added); see also Mobile Materials, 871 F.2d at 910; id. at 919-20 (McKay, J., dissenting).
 
 
 19
 And the dissent's concern that "the majority's holding would not restrict the prosecutor to the charges returned by the grand jury," Dissent, op. at 1540, is misplaced in the context of this case. The defendants were not convicted of any crimes other than those they were charged with, nor was there evidence introduced at trial other than that alleged in the indictment, as the dissent acknowledges. The statement that "neither the majority's holding nor its logic necessarily requires" such a factual scenario is not surprising, because we are guided by the sound judicial principle enunciated in Article III of the Constitution to judge only the situation before us.[9]
 
 
 20
 In addition to their notice and double jeopardy arguments, Teafatiller and Staggs assert another basis for challenging the sufficiency of the indictment. The appellants argue that because the jury found guilt on the conspiracy count, the jury improperly considered the overt acts listed therein as proved for purposes of the CCE count. According to the appellants, this result occurred because the jury lacked the guidance of a more specific CCE count. The jury was guided by more than the indictment, however, as the trial court instructed the jury that it only had to find the existence of one overt act in order to convict on the conspiracy count, rec. vol. XIII at 947-48, while it was required to find three drug violations in order to find guilt on the CCE charge. Id. at 949-50. The trial court also instructed the jury that its verdict on any one count should not control the verdict with regard to any other count. Id. at 941-42. Thus, appellants' contention that the jury may have convicted on the CCE count based solely on its finding of guilt on the conspiracy count is without merit. See United States v. Hall, 843 F.2d 408, 411 (10th Cir.1988). The indictment is sufficient to charge the CCE offense and support the convictions of Teafatiller and Staggs. Based on the foregoing, the CCE convictions of appellants Teafatiller and Staggs are AFFIRMED. The panel opinion filed this same day resolves the balance of the issues raised by this appeal.
 
 LOGAN, Circuit Judge, concurring:
 
 21
 We heard the instant case en banc on the sufficiency of the indictment issue to see if we could obtain a majority on issues similar, but not identical, to the issue on which we split 5-5 in United States v. Rivera, 874 F.2d 754 (10th Cir.1989) (en banc). As one of the five votes that found the CCE indictment in Rivera insufficient, I take this opportunity to explain why I join others to produce a majority upholding the CCE indictment now before us.
 
 
 22
 Generally indictments tracking the words of the underlying criminal statute are valid. Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The other circuits cited in Judge Baldock's opinion have applied that rule to uphold CCE indictments, often with little or no analytical discussion. The indictment before us does state the elements of the CCE offense--the contested element here being participation in "a continuing series of violations of this title [II] or title III." 21 U.S.C. Sec. 848 (before 1986 amendment).
 
 
 23
 Charging a CCE violation only in the language of the statute, however, presents two problems not usually present in the charging of other crimes. One is how can the court know that enough violations were presented to the grand jury to satisfy the "continuing series" element, permitting the reviewing court to monitor the defendant's Fifth Amendment right to an "indictment of a Grand Jury." In Rivera only two violations were mentioned in all counts of the indictment and no proof was offered that the grand jury had considered and found evidence of a third violation. Thus, I was not able to satisfy myself that the grand jury indeed identified the defendant with three violations, the minimum the courts have required for a "continuing series of violations," under Sec. 848. See United States v. Apodaca, 843 F.2d 421, 427 (10th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).
 
 
 24
 In the case before us, I am sure that the grand jury did identify defendants Teafatiller and Staggs with at least three violations, because it so charged them in other counts returned in the same indictment containing the CCE count. Thus, my concern in Rivera, that the grand jury had not performed its Fifth Amendment function, is satisfied here.
 
 
 25
 Relying upon Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the dissent would find a Fifth Amendment "indictment of a Grand Jury" violation unless the exact offenses presented to the grand jury and used to convict are set out in the indictment. They rely upon the words of the Supreme Court in Russell that a defendant should not "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Id. at 770, 82 S.Ct. at 1050 (emphasis added). I think the dissenters take the words of Russell too literally. Nowhere in the criminal law do we require all evidence presented at trial to be presented to the grand jury; it is custom and practice to present just enough to get the indictment. In a bank robbery case one teller witness may give testimony to the grand jury, but a different or additional teller may testify at trial. Facts and witnesses uncovered after the indictment, and therefore not presented to the grand jury, may be presented at trial, so long as the offense proved is the same.
 
 
 26
 Is proof that defendant committed an additional or different violation of Title II or III than those presented to the grand jury the same as using a teller who did not appear before the grand jury to identify a bank robber at trial? The dissenters would answer no, because they view the precise violations presented to the grand jury, which they would require to be set out in the CCE count, to be "elements" of the crime. To me the element is "a continuing series of violations," and the specific violations the prosecutor presents are merely the evidence used to prove that element. The dissenters' reasoning would require that the five individuals with whom the defendant allegedly has acted in concert, see 21 U.S.C. Sec. 848(c)(2), be identified by name in the indictment: their identities would be "elements" of the CCE crime. Because I believe the three violations are evidence of the CCE element, I believe it is permissible to prove any three violations at trial. It is little different from utilizing eyewitness B instead of eyewitness A, who went before the grand jury, to prove a bank robbery.
 
 
 27
 This raises, however, the second problem in CCE indictments not present in many other federal criminal indictments. That is the defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation," sufficiently to prepare a defense: the notice problem.[1]
 
 
 28
 Unlike civil cases, in which full discovery and disclosure is the norm, the federal criminal law contemplates only partial disclosure of the government's case. See Fed.R.Crim.P. 16, Conf.Comm.Notes, H.R.Rep. No. 94-414 (In rejecting an amendment to Rule 16, committee stated that "[a] majority of the [House and Senate] Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial."). Thus, the courts must perform a balancing act between requiring enough disclosure to fairly treat the defendant and enable him to prepare a defense and preserving the government's right to shield witnesses and evidence not required to be disclosed by the criminal procedure rules. Important in this balance is the bill of particulars. See Fed.R.Crim.P. 7(f). The availability of the bill of particulars, I believe, provides adequate protection for the defendant's Sixth Amendment rights by giving him the means in a CCE case like that at bar to learn the specific violations the government intends to use at trial. See United States v. Debrow, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953); Glasser v. United States, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942). Use of the bill of particulars is more desirable than requiring the government to reconvene the grand jury for a superceding indictment should the prosecutor want to present some different evidence on the "continuing series of violations" element than was originally presented. Although we review the grant or denial of a bill of particulars by an abuse of discretion standard, e.g., United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir.1988), the trial court's discretion would be abused, in my view, if the district court refused to grant a bill requiring the government to reveal the violations it intended to prove to establish the "continuing series" element.
 
 
 29
 In the instant case I see no constitutional violations in this indictment, and, therefore, I concur in Judge Baldock's opinion.
 
 
 30
 EBEL, Circuit Judge, dissenting, with whom MCKAY and SEYMOUR, Circuit Judges, join:
 
 
 31
 The appellants' continuing criminal enterprise ("CCE") convictions should, in my opinion, be reversed because the indictment in this case violated the appellants' constitutional right to be tried only upon charges that have been passed upon by a grand jury. My fundamental disagreement with the majority's opinion is that it focuses only upon notice concerns and does not adequately address the Fifth Amendment requirement that "[n]o person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."
 
 
 32
 We granted en banc review on the following question:
 
 
 33
 Whether a continuing criminal enterprise indictment which tracks the language of the statute and contains three violations underlying the series in another count of the indictment is sufficient to charge a continuing criminal enterprise offense under 21 U.S.C. Sec. 848, consistent with the requirements for an indictment under the fifth and sixth amendments of the Constitution.
 
 
 34
 That question necessarily involves two issues: (1) whether it is constitutionally sufficient for a CCE count in an indictment merely to track the language of the CCE statute without alleging the predicate acts that constitute the criminal enterprise, and (2) if tracking the language of the statute is not sufficient, whether the constitutional infirmity can be remedied by looking to allegations in other counts that have not been specifically incorporated into the CCE count.
 
 
 35
 The majority does not decide the first question because this court is evenly divided on that issue. See United States v. Rivera, 874 F.2d 754 (10th Cir.1989). Instead, the majority addresses the second issue and concludes that a CCE count that merely tracks the statutory language is sufficient if the three qualifying drug offenses are alleged in another count of the indictment, even though the CCE count does not expressly incorporate the allegations of the other count.
 
 
 36
 I believe that Counts II and III of the indictment, standing alone, are constitutionally infirm because they do not protect the appellants' Fifth Amendment right to be tried only for charges returned by a grand jury. Further, the infirmity of those counts is not cured by the allegations of specific drug offenses found in Count I because the allegations of Count I are not expressly incorporated into Counts II and III. Accordingly, I respectfully dissent.
 
 I.
 
 37
 INCORPORATING ALLEGATIONS FROM OTHER COUNTS NOT PERMITTED IN
 
 THE ABSENCE OF EXPRESS INCORPORATION
 
 38
 The majority opinion holds that deficiencies in one count of a multi-count indictment can be cured by looking to allegations found in other counts of the same indictment, even though such allegations are not expressly incorporated into the deficient count. I believe that the majority is mistaken for at least four reasons.
 
 
 39
 A. Precedent Solidly Precludes Incorporation Except by Express Reference
 
 
 40
 The majority's holding conflicts with cases from nine other circuits that have held that allegations in one count cannot supply missing allegations in another count in the absence of express incorporation by reference. United States v. Fulcher, 626 F.2d 985, 988 (D.C.Cir.) ("Each count in an indictment is regarded as if it was a separate indictment. Each count must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically incorporated."), cert. denied, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); United States v. Winter, 663 F.2d 1120, 1138 (1st Cir.1981) (same), cert. denied sub nom. Goldenberg v. United States, 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983); United States v. Markus, 721 F.2d 442, 444 (3d Cir.1983) (court refused to imply incorporation because "nothing shall be added to an indictment without the concurrence of the grand jury"); United States v. Hooker, 841 F.2d 1225, 1231 (4th Cir.1988) (en banc) ("court must read each count of indictment independently of all other counts"); United States v. Hajecate, 683 F.2d 894, 901 (5th Cir.1982) ("[A]n implicit reference [to other counts in an indictment] does not satisfy the requirements of due process.... [W]hile the specificity required in an indictment can be achieved by incorporation of another count, this incorporation must be express, not implicit."), cert. denied sub nom. Eisenberg v. United States, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983); United States v. Gray, 790 F.2d 1290, 1298 (6th Cir.1986) ("Although Federal Rule of Criminal Procedure 7(c) permits the government to incorporate in one count allegations made in another count, the incorporation must be express, not implicit."), rev'd on other grounds sub nom. McNally v. United States, United States v. McNally, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); United States v. Gordon, 253 F.2d 177, 180 (7th Cir.1958) (allegation of value of stolen goods from other counts could not be read into a different count in the absence of express incorporation); United States v. Miller, 774 F.2d 883, 885 (8th Cir.1985) ("It is well-settled, however, that each count of an indictment 'must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically incorporated.' "); Walker v. United States, 176 F.2d 796, 798 (9th Cir.1949) ("[E]ach count in an indictment is regarded as if it were a separate indictment and must be sufficient in itself. Therefore, it must stand or fall on its own allegations without reference to other counts not expressly incorporated by reference.").
 
 
 41
 The Winter case from the First Circuit is particularly relevant here. In Winter, Count I of a multi-count indictment charged several defendants with conspiring to violate 18 U.S.C. Sec. 1962(c) (RICO) and listed several predicate acts committed by the defendants. However, Charles and James DeMetri, two of the defendants charged in Count I, were named only in connection with at most one predicate act, whereas two predicate acts are required to charge an accused with conspiracy to violate RICO. 663 F.2d at 1136. The government argued that the indictment was sufficient as against the DeMetris because Counts 5 and 32 of the same indictment properly charged them with committing two predicate offenses. The court rejected the government's argument:
 
 
 42
 Count One, however, does not incorporate by reference either Count Five or Count Thirty-Two and neither of them refers to Count One. Only Count Two, which does not name the DeMetris as defendants, incorporates Count One by reference. The indictment as drawn does not admit of Counts Five and Thirty-Two being used as predicate acts for Count One. "Each count in an indictment is regarded as if it was a separate indictment." ... "Each count must stand on its own, and cannot depend for its validity on allegations in another count not specifically incorporated." ...
 
 
 43
 We find Count One legally insufficient as to Charles and James DeMetri because it fails to charge that they agreed to commit two predicate crimes. It must, therefore, be dismissed as to them, and their convictions on it reversed.
 
 
 44
 Id. at 1138 (quoting Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), and Fulcher, 626 F.2d at 988). Just as the First Circuit found the indictment invalid against the DeMetris because Count One failed to incorporate by reference the predicate acts in Counts Five and Thirty-Two, I would hold Counts II and III of the indictment here invalid because they failed to incorporate by reference the predicate acts in Count I.
 
 
 45
 Numerous commentators agree that "each count is considered as if it were a separate indictment, and must be sufficient without reference to other counts unless they are expressly incorporated by reference". 1 Wright & Miller, Fed.Pract. & Proc. Sec. 123; see also 9 Fed.Proc.L.Ed. Sec. 22:489 ("each count must be considered as a separate indictment or information for purposes of ascertaining its sufficiency, at least where no other count has been specifically incorporated"). Cf. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) ("Each count in an indictment is regarded as if it was a separate indictment.").[1]
 
 
 46
 Notwithstanding the majority's reliance on our previous case of United States v. Neal, 692 F.2d 1296 (10th Cir.1982), I do not believe that case is controlling. There we explicitly held that the allegations in the first count were sufficient in themselves to charge the offense. Therefore it was not necessary to incorporate allegations from other counts in order to supply essential missing allegations. Id. at 1301. The reference to allegations in other counts of that indictment was largely in response to the defendant's challenge that he was inadequately appraised of the content and nature of the charge against him. This court merely stated that the nature of the charge and the evidence before the grand jury were "further revealed" by other counts of the indictment. Id. at 1302. That is far from a holding that missing allegations can be supplanted from one count to another.[2]
 
 
 47
 B. Right to be Indicted by a Grand Jury Precludes Incorporation Except by Express Reference
 
 
 48
 The majority errs by failing adequately to address the Fifth Amendment right of an accused to be tried only upon charges returned by a grand jury. The majority reaches its conclusion that the allegations in Count I of the indictment can remedy any constitutional deficiencies in Counts II and III by framing the central issue as involving "the notice function of the indictment," and it then concludes that the appellants received adequate notice of the charges from the allegations in Count I.
 
 
 49
 However, the rationale for treating each count in an indictment separately extends beyond a concern for notice to the defendant, although notice obviously is important. The rationale also encompasses the concern expressed in Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962), that courts will have "to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment," which could allow "a defendant to be convicted on the basis of facts not found by, or perhaps not even presented to, the grand jury." 369 U.S. at 770, 82 S.Ct. at 1050.
 
 
 50
 The inescapable problem in this case is that we do not know, and cannot know, whether the grand jury found probable cause to indict the appellants for CCE violations based upon the same factual allegations that were contained in Count I, or whether the grand jury determined that the organizational aspects of the CCE violation were linked instead to other predicate acts that were not included in Count I. That the evidence presented at trial conformed with the allegations in Count I does not help us because we still do not know if those allegations were what the grand jury considered when it charged the appellants with CCE. Therefore, the indictment did not conform to the constitutional standards expressed in Russell.
 
 
 51
 C. Rule 7(c)(1) of the Federal Rules of Criminal Procedure Allows Incorporation Only by Express Reference
 
 
 52
 The majority's holding is contrary to Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which states that "[a]llegations made in one count may be incorporated by reference in another count." (Emphasis added.) By expressly providing the manner in which incorporation can occur, the Rule suggests that alternative methods of incorporation are excluded under the "long-honored rule of statutory construction, expressio unius est exclusio alterius (the expression of one thing is the exclusion of others)." United States v. Cardenas, 864 F.2d 1528, 1434 (10th Cir.1989). If incorporation were automatic among each count in a multi-count indictment, then there would have been no reason for the drafters of the Rule to have added the words, "by reference," particularly when "[t]he draftsmen of the Rules fully realized that the edifice they were erecting must rest on the sure foundation of fundamental rights." Cummings, The Third Great Adventure, 29 A.B.A.J. 654, 655 (1943) (discussing history of Rules of Criminal Procedure).D. The Majority's Holding Would Not Restrict the Prosecutor to the Charges Returned by the Grand Jury
 
 
 53
 Because Counts II and III do not incorporate by reference the allegations in Count I, the prosecutor presumably was not limited at trial by those allegations. Although the prosecutor here did in fact limit his CCE evidence to the transactions alleged in Count I, neither the majority's holding nor its logic necessarily requires that he have done so. Because the prosecutor apparently was not so bound, he should not have received the benefit of the allegations in Count I to sustain any deficiencies in Counts II and III.
 
 
 54
 For these reasons, I would hold that the factual allegations in Count I cannot be used to cure any deficiencies in Counts II and III because those allegations are not specifically incorporated by reference into Counts II and III.
 
 II.
 
 55
 CCE COUNT IS INSUFFICIENT WHICH MERELY TRACKS STATUTORY
 
 
 56
 LANGUAGE WITHOUT ALLEGING SPECIFIC PREDICATE ACTS
 
 
 57
 Because I believe that the allegations of Counts I cannot be read into Counts II or III, I cannot avoid addressing the issue of whether Counts II and III are constitutionally sufficient independent of Count I. I would hold that Counts II and III are not constitutionally sufficient because they failed to protect the appellants' Fifth Amendment right to be tried only upon charges specifically returned by a grand jury.
 
 
 58
 A. The Protective Function of the Grand Jury
 
 
 59
 In my view, this case is controlled by Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In Russell, the Supreme Court held that a defendant cannot be convicted on the basis of facts that may not have been specifically presented to, and found by, the grand jury:
 
 
 60
 To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.
 
 
 61
 Id. at 770, 82 S.Ct. at 1050 (emphasis added).
 
 
 62
 Russell involved defendants who were charged with refusing to answer certain questions when summoned to testify before a congressional subcommittee. For each defendant, the indictment failed to identify the subject that was under subcommittee inquiry at the time the witness was interrogated. Rather, the indictment stated only the conclusory allegation that the questions to which answers were refused "were pertinent to the question under inquiry." Id. at 752, 82 S.Ct. at 1041.
 
 
 63
 The Court there held that the indictments were deficient because they failed to satisfy the Fifth and Sixth Amendments. The Court emphasized that the constitutional import of charging an accused with specificity lies not only with providing notice to the accused to allow him to prepare his defense, but also with ensuring that the accused is not convicted of any offense not charged by the grand jury, as evidenced by the indictment. Id. at 770, 82 S.Ct. at 1050. Indeed, "[t]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." Id. at 771, 82 S.Ct. at 1051 (quoting Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)).
 
 
 64
 The principles enunciated in Russell are deeply entrenched in our legal heritage:
 
 
 65
 The constitutional provision that a trial may be held in a serious federal criminal case only if a grand jury has first intervened reflects centuries of antecedent development of common law, going back to the Assize of Clarendon in 1166. "The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders. There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes."
 
 
 66
 Russell, 369 U.S. at 761, 82 S.Ct. at 1045 (quoting Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956)).
 
 
 67
 Over 100 years ago, in Ex Parte Bain, 121 U.S. 1, 12, 7 S.Ct. 781, 787, 30 L.Ed. 849 (1887), the Supreme Court explained the importance of the protective aspects of the grand jury system:
 
 
 68
 It has been said that, since there is no danger to the citizen from the oppressions of a monarch, or of any form of executive power, there is no longer need of a grand jury. But, whatever force may be given to this argument, it remains true that the grand jury is as valuable as ever in securing, in the language of Chief Justice Shaw in the case of Jones v. Robbins, 8 Gray, 329, "individual citizens" "from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before a probable cause is established by the presentment and indictment of a grand jury;" and "in case of high offences" it "is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions."
 
 
 69
 The Supreme Court recently has reaffirmed Bain 's holding that a defendant cannot be convicted of an offense different from that which was stated in the indictment:
 
 
 70
 If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.
 
 
 71
 United States v. Miller, 471 U.S. 130, 142-43, 105 S.Ct. 1811, 1818, 85 L.Ed.2d 99 (1985) (quoting Bain, 121 U.S. at 10, 7 S.Ct. at 786). The Court also reiterated the rule that "nothing can be added to an indictment without the concurrence of the grand jury by which the bill was found." Id. at 143, 105 S.Ct. at 1818 (emphasis added; quoting United States v. Norris, 281 U.S. 619, 622, 50 S.Ct. 424, 425, 74 L.Ed. 1076 (1930)).[3]
 
 
 72
 This court has similarly emphasized the importance of the grand jury and its protective function:
 
 
 73
 The function of the grand jury "was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will." We are mindful of the oft-quoted words of Judge Learned Hand that "[s]ave for torture, it would be hard to find a more effective tool of tyranny than the power of unlimited and unchecked ex parte examination."
 
 
 74
 United States v. Kilpatrick, 821 F.2d 1456, 1465 (10th Cir.1987) (quoting Hale v. Henkel, 201 U.S. 43, 59, 26 S.Ct. 370, 372, 50 L.Ed. 652 (1906), and United States v. Remington, 208 F.2d 567, 573 (2d Cir.1953) (L. Hand, J., dissenting)), aff'd sub nom. Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).
 
 
 75
 This history makes clear that a grand jury indictment is more than just a means of notifying the defendant of the charges against him. The Constitution's requirement that citizens decide whether there is probable cause to try an accused for a serious crime serves as a check on the discretion of overzealous prosecutors.B. Counts II and III are Constitutionally Infirm Under the Indictment Clause of the Fifth Amendment
 
 
 76
 In light of the importance the Supreme Court has consistently placed on an accused's right to tried only on charges passed upon by a grand jury, I would hold that Counts II and III, viewed independently from Count I, violated the appellants' Fifth Amendment right to a grand jury indictment. The bare statutory language contained in Counts II and III gave no assurances whatsoever that the grand jury found, or even considered, the incidents or transactions for which the appellants ultimately were tried and convicted.
 
 
 77
 Because Counts II and III did not identify any specific predicate acts, the prosecutor could circumvent the grand jury by relying on predicate acts at trial other than those that were passed upon by the grand jury. Russell flatly rejected that result:
 
 
 78
 [I]f it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists.
 
 
 79
 369 U.S. at 771, 82 S.Ct. at 1051 (quoting Bain, 121 U.S. at 10, 7 S.Ct. at 786).
 
 
 80
 A grand jury indictment is not an instrument that deals simply in abstract legal theory. Rather, it is an instrument of practical function--to ensure that there are sufficient facts constituting a crime alleged against a defendant to warrant a trial:
 
 
 81
 It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species--it must descend to the particulars. ["] ... For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances.
 
 
 82
 United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 (1875) (emphasis added; citation omitted), quoted in part in Russell, 369 U.S. at 765, 82 S.Ct. at 1047. "Undoubtedly the language of a statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Hamling v. United States, 418 U.S. 87, 117-18, 94 S.Ct. 2887, 2907-08, 41 L.Ed.2d 590 (1974) (quoting United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888)). See also United States v. Curtis, 506 F.2d 985, 990 (10th Cir.1974) (an indictment must contain specific factual allegations of "the nature or character of any scheme or artifice to defraud," and "it is not sufficient in this regard to merely plead the statutory language").
 
 
 83
 The rule that material facts and circumstances must be pleaded in the indictment has been codified in Fed.R.Crim.P. 7(c)(1), which provides: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." (Emphasis added). If we were to abandon that standard and allow the grand jury to indict only in the general language of a statute, it would then be left to the prosecutor to decide which transaction or criminal conduct he wanted to bring within the general language of the indictment. The great importance that the Constitution assigns to the grand jury as gatekeeper would "be frittered away until its value is almost destroyed." Russell, 369 U.S. at 771, 82 S.Ct. at 1051.
 
 
 84
 Moreover, if we did not require "essential" facts to be set forth in the indictment, we also would incapacitate reviewing courts from determining what the grand jury did. Those courts would be required to "guess as to what was in the minds of the grand jury," again diluting to an impermissible degree the defendant's right to answer only for specific offenses that were returned by the grand jury. See id. at 770, 82 S.Ct. at 1050.
 
 
 85
 There is no dispute that it is "essential" to the crime of CCE that the defendant engage in three or more qualifying drug transactions. See United States v. Apodaca, 843 F.2d 421, 427 (10th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). The crime of CCE is engaging in three or more qualifying drug transactions undertaken in concert with others over whom the defendant acts in a supervisory capacity. Unless the three component drug transactions are alleged with specificity in the indictment, the accused and the court cannot know what activity the grand jury found to constitute a continuing criminal enterprise. Where the essential factual components of CCE are not alleged with particularity, the indictment fails to "descend to the particulars"; it fails to set forth "with reasonable particularity the time, place, and circumstances"; it fails to contain "a statement of the facts and circumstances as will inform the accused of the specific offence"; and it fails to contain a "definite written statement of the essential facts constituting the offense charged."[4]
 
 
 86
 I have no doubt that the majority would strike down an indictment that charged only, in the words of 18 U.S.C. Sec. 2113, that the defendant took or attempted to take something of value from a "bank, credit union, or any savings and loan association" located somewhere within the Eastern District of Oklahoma within the time period of November 1985 to August 1987. Such an indictment, although stating the statutory prohibition that was violated, would fail to identify the particular offense or transaction for which the defendant is being prosecuted. Counts II and III of the indictment here, in my opinion, have the same infirmity.
 
 
 87
 This court has frequently sustained the dismissal of civil actions for failure to plead sufficient facts, notwithstanding the absence of Fifth Amendment grand jury concerns and Sixth Amendment notice concerns, the liberal pleading practices permitted by Rule 8 of the Federal Rules of Civil Procedure, and the availability of broad discovery in civil cases. E.g., Hammond v. Bales, 843 F.2d 1320, 1323 (10th Cir.1988) ("[W]here a plaintiff in a Sec. 1983 action attempts to assert the necessary state action by implicating a state official in a conspiracy with a private defendant, the pleadings must specifically present facts showing agreement and concerted action. Conclusory allegations without supporting facts are insufficient.") (citing Sooner Products Co. v. McBride, 708 F.2d 510, 512 (10th Cir.1983); Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383, 1387 (10th Cir.1980) (complaint that did "little more than recite the relevant anti-trust laws" without providing underlying facts was properly subject to dismissal). Moreover, this court has on several occasions dismissed pro se complaints, which are to be liberally construed, for failure to plead sufficient facts. E.g., Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir.1989) (prisoner's conspiracy action was properly dismissed where the complaint failed to allege specific facts showing an agreement and concerted action); Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir.1986) (prisoner's complaint was properly dismissed where allegations were conclusory and unsupported by underlying facts). A fortiori, a criminal indictment, which carries greater constitutional proscriptions than do civil complaints, should be required to plead specific transactions or events that constitute the alleged offense.[5]
 
 
 88
 Because the bare statutory language of Counts II and III provides none of the protections guaranteed by the Fifth Amendment right to a grand jury indictment, I would hold that those counts are not sufficient to charge the appellants with CCE.[6]
 
 
 89
 C. Counts II and III do not Provide Adequate Notice Under the Right to be Informed Clause of the Sixth Amendment
 
 
 90
 A second issue that gives me concern is whether Counts II and III, which cite little more than the statutory language of CCE and which do not incorporate the allegations found in Count I, violated the appellants' Sixth Amendment right to be informed of the "nature and cause of the accusation" against them. Because I would hold that Counts II and III are constitutionally infirm under the grand jury clause of the Fifth Amendment, I do not dwell on the notice function of the indictment under the Sixth Amendment except to point out that, in my opinion, the appellants also received constitutionally inadequate notice of the charges against them when Counts II and III of the indictment charged only in the naked language of the statute.
 
 
 91
 To satisfy Sixth Amendment notice requirements, an indictment must be "accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence." Hamling v. United States, 418 U.S. 87, 117-18, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590 (1974) (emphasis added; quoting United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1887)). Here, Counts II and III lacked such a statement. Those counts merely charged the appellants, in the statutory language, with violating Sec. 848 by "repeatedly violating Title 21 United States Code, Section 841(a)(1) and other provisions of Title 21, regarding amphetamine," within a two year period "within the Eastern District of Oklahoma, and elsewhere." This language could merely be charging defendants with three incidents of distributing amphetamines in a suburb of Muskogee, Oklahoma, or it could be charging defendants with controlling an amphetamine manufacturing operation that operated nationwide over the entire two-year period, or it could be charging anything in between. Counts II and III of the indictment tell defendants what statutes they allegedly violated, but it does not tell them what acts they did that will form the essential basis of the charge against them.
 
 
 92
 It is sometimes suggested that a defendant can rely on a bill of particulars to fill in details about an offense. But a bill of particulars cannot fill in "essential" facts that constitute the very offense charged, for "it is a settled rule that a bill of particulars can not save an invalid indictment." Russell, 369 U.S. at 770, 82 S.Ct. at 1050.[7]
 
 III.
 HARMLESS ERROR ANALYSIS INAPPROPRIATE
 
 93
 The government argues that any deficiencies in Counts II and III were rendered "harmless" by the petit jury's guilty verdict. See United States v. Mechanik, 475 U.S. 66, 73, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986) ("the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation"). The government misconstrues the import of Mechanik. There, the alleged error in the grand jury proceeding was not called to the district court's attention until the second week of trial, and the motion was not ultimately ruled upon until after trial. The Supreme Court, in holding that the relatively technical violation of procedures before the grand jury was harmless error in that context, specifically stated that it was expressing "no opinion as to what remedy may be appropriate for a violation of Rule 6(d) that has affected the grand jury's charging decision and is brought to the attention of the trial court before the commencement of trial." Id. at 72, 106 S.Ct. at 942.
 
 
 94
 Here, the error was called to the attention of the district court before the trial, and the error does not involve the procedural matters addressed by Rule 6(d) of the Federal Rules of Criminal Procedure, but rather goes to the very essence of the grand jury's function. Accordingly, I believe that this issue is controlled by the rule articulated in United States v. Miller, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), that the right to be tried only on charges presented in an indictment returned by a grand jury is not governed by the harmless error standard: "Deprivation of such a basic right [to indictment by a grand jury] is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." Id. at 140, 105 S.Ct. at 1817 (quoting Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). See also Russell, 369 U.S. at 763, 82 S.Ct. at 1046 ("the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules") (construing Rule 7(c); quoting Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041 (1959)); cf. United States v. Smith, 553 F.2d 1239, 1242 (10th Cir.1977) ("the absence of prejudice to the defendant does not cure what is necessarily a substantial, jurisdictional defect in the indictment").
 
 
 95
 In this regard, I agree with the Fourth Circuit's decision in United States v. Hooker, 841 F.2d 1225, 1233 (4th Cir.1988) (en banc), where the court dismissed a count that failed to allege interstate commerce even though other counts in the indictment alleged acts involving interstate commerce. Citing the Tenth Circuit decision in Smith, 553 F.2d at 1242, the court held that the error in the defective count could not be harmless under Mechanik even though the defendant was subsequently convicted by a petit jury under that count:
 
 
 96
 The absence of prejudice to the defendant in a traditional sense does not cure a substantive, jurisdictional defect in an indictment. Unlike the situation in Mechanik, the defect of a completely missing essential element cannot be cured by a later jury instruction because there is nothing for a petit jury to ratify.... A petit jury verdict can do no more than show that the grand jury could have given the defendant adequate notice had it chosen to do so. This cannot undo the harm of failing to give that notice timely, nor can it confer jurisdiction on the court where none existed. Neither instructions nor a petit jury verdict can satisfy after the fact the Fifth Amendment right to be tried upon charges found by a grand jury.
 
 
 97
 Id. at 1232.
 
 
 98
 Because the indictment here failed to conform to minimal constitutional standards, the harmless error standard does not apply. Therefore, the appellants' convictions on the CCE charges should be reversed.
 
 IV.
 CONCLUSION
 
 99
 I am persuaded that merely tracking the statutory language is not sufficient in this case, and that each count of an indictment must be viewed as a separate indictment without reference to other counts in the absence of an express incorporation by reference. Because the majority opinion has split from almost every other circuit and is, in my opinion, contrary to controlling Supreme Court precedent, I must respectfully dissent.
 
 
 
 [1]
 21 U.S.C. Sec. 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. Sec. 841(a)(1) makes it unlawful for any person "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."
 
 
 [2]
 A person is involved in a continuing criminal enterprise if:
 (1) he violates any provision of this title or title III the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this title or title III--
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.
 21 U.S.C. Sec. 848.
 
 
 [3]
 Both CCE counts read in pertinent part:
 Beginning in or about November, 1985, and continuing to on or about the date of this Indictment, within the Eastern District of Oklahoma, and elsewhere, the defendant [Teafatiller/Staggs] did knowingly, intentionally, unlawfully and willfully engage in a continuing criminal enterprise in that he repeatedly violated Title 21, regarding amphetamine, a Schedule II, stimulant controlled substance, which violations were part of a continuing series of violations undertaken by defendant [Teafatiller/Staggs], in concert with at least five other persons with respect to whom [Teafatiller/Staggs] occupied a position of organizer, a supervisory position, or any other position of management, and from which the defendant [Teafatiller/Staggs] obtained substantial income and resources.
 Rec. vol. I, doc. 4 at 6-10.
 
 
 [4]
 Count one charged each appellant with conspiracy to manufacture, possess, and distribute amphetamine, see 21 U.S.C. Secs. 846 & 841(a)(1), as well as at least two overt acts of manufacturing or possession in furtherance of that conspiracy. Rec. vol. I, doc. 4 at 1-4. Thus, each were charged with three violations sufficient, when proved, to support a CCE conviction. See United States v. Hall, 843 F.2d 408, 411 (10th Cir.1988)
 
 
 [5]
 The dissent contends that prior to these statements, the court in Neal had already explicitly held that the count in question, count one, was sufficient by itself. Dissent, op. at 1538. This contention is untenable. The discussion in Neal begins with the ultimate conclusion that count one is sufficient; that conclusion is then followed by more than a page of supporting reasoning. It is in this discussion explaining the sufficiency of count one that the court looked to other counts, not explicitly incorporated by reference, to reveal further the nature of the charge and the evidence before the grand jury. Neal, 692 F.2d at 1302. (Immediately following this reference to other counts, a footnote specifically lists the requirements of an indictment, including the grand jury function, id. at n. 5.). The court describes details alleged in other counts, and later concludes with its actual holding regarding count one: "We nevertheless feel the indictment was not fatally defective in view of the other details alleged, which we have noted." Id. at 1303. It is inescapable that some of these details came from other counts not explicitly incorporated by reference
 
 
 [6]
 After citing cases from other circuits requiring explicit incorporation by reference, the dissent criticizes the use of Moya-Gomez, Esposito, and Becton in part because they dealt only with the notice requirement of an indictment, rather than the grand jury function emphasized by the dissent, an emphasis we reject infra at p. 1534. See Dissent, op. at 1538 n. 1. Despite such criticism, not one of the cases cited by the dissent as more persuasive than the above authorities mentions how the rule of express incorporation by reference relates to the grand jury function, and only one mentions how the rule relates to any of the constitutional requirements relevant to indictments, that being notice. See United States v. Hajecate, 683 F.2d 894, 901 (5th Cir.1982) (notice for preparation of defense); see also United States v. Miller, 774 F.2d 883, 885 (8th Cir.1985) (grand jury function considered, but rule of express incorporation by reference not explained on that basis). In any event, as noted in the text, the express incorporation cases cited by the dissent conflict with our decision in Neal, which, explicitly considering the grand jury function, looked to indictment counts not expressly incorporated by reference
 The dissent also criticizes Esposito, Becton, and United States v. Zavala, 839 F.2d 523, 526 (9th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988), because unlike the instant case, the indictments in those cases were not challenged at trial. Interestingly, only Zavala, which we did not even rely upon, factored the lack of objection at trial into its standard of review. Zavala, 839 F.2d at 526. The court in Becton concluded that the indictment "did not prejudice Becton in any way," 751 F.2d at 256, and the court in Esposito determined that reversal was "unnecessary to protect the rights of the defendants," 771 F.2d at 289. These decisions were grounded on substantive concerns and cannot be read as being in any way tied to a liberal construction of indictments based on the timing of objections. This is evidenced by the decision in Moya-Gomez, where the defendant did object at trial, and where the court relied on Becton to uphold the sufficiency of the indictment. Moya-Gomez, 860 F.2d at 752.
 In the same vein, we must address the dissent's reliance, in this criminal context, upon cases considering the sufficiency of civil complaints. See Dissent, op. at 1543-44. This is like comparing apples with oranges. The underlying processes are structurally different. The criminal proceeding is monitored from its inception by a district judge (or a magistrate) and a grand jury, to satisfy probable cause requirements, among other things. The civil complaint is not screened in the slightest by a court prior to filing, thus requiring some screening-type rules to be instituted by the court itself. See Fed.R.Civ.P. 12(b), 56. Finally, the dissent's citation to civil cases is inconsistent with and undercuts its emphasis on the grand jury function, which has no relation to the civil context. Nevertheless, the dissent clings to this comparison, see Dissent, op. at 1544 n. 5, reemphasizing its primary theme of the grand jury function, but not pointing to any authority or logic suggesting that the civil complaint context is somehow helpful in analyzing that function.
 
 
 [7]
 This is the approach counseled by Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962):
 "This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. This has been a salutary development in the criminal law." Smith v. United States, 360 U.S. 1, 9 [79 S.Ct. 991, 996, 3 L.Ed.2d 1041 (1959) ]. "But ... the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." Ibid. Resolution of the issue presented in the cases before us thus ultimately depends upon the nature of "the substantial safeguards" to a criminal defendant which an indictment is designed to provide. Stated concretely, does the omission from an indictment under 2 U.S.C. Sec. 192 of the subject under congressional committee inquiry amount to no more than a technical deficiency of no prejudice to the defendant? Or does such an omission deprive the defendant of one of the significant protections which the guaranty of a grand jury indictment was intended to confer?
 Id. at 763, 82 S.Ct. at 1046.
 
 
 [8]
 The Court in Russell held that in prosecutions involving 2 U.S.C. Sec. 192, which prohibits the refusal to answer questions pertinent to a subject under inquiry by a congressional committee, pertinency to the subject under inquiry is "the very core of criminality." Russell, 369 U.S. at 764, 82 S.Ct. at 1047. Thus, the allegation of the subject was necessary to the sufficiency of the indictment, lest it leave "the chief issue undefined." Id. at 766, 82 S.Ct. at 1048. Because of this, courts have distinguished Russell as involving a unique situation. See Neal, 692 F.2d at 1302; United States v. Perkins, 748 F.2d 1519, 1526 n. 11 (11th Cir.1984); United States v. McClean, 528 F.2d 1250, 1257 (2d Cir.1976). In his dissent in Russell, Justice Harlan expressed the fear that the decision would not be seen as unique but would lead to detailed indictments in all criminal cases, contrary to Fed.R.Crim.P. 7(c). See Russell, 369 U.S. at 787, 793, 82 S.Ct. at 1059, 1062
 
 
 [9]
 Without the benefit of any factual framework, it is unclear if the dissent is referring to an amendment (alteration of charging terms), a variance (facts proved at trial materially different from those alleged), or neither. See United States v. Weiss, 752 F.2d 777, 787 (2d Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985). In any event, this portion of the dissent's theory is not applicable in the context of evaluating the sufficiency of an indictment. In Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court held that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him," considering such to be an improper amendment of or variance from the indictment. Id. at 217, 80 S.Ct. at 273. It is not the anticipation of such an amendment or variance which invalidates an indictment, however, but the occurrence of such which may invalidate a conviction. Thus, consideration of the possible use of unindicted charges or materially different facts at trial is not relevant to the analysis of the sufficiency of an indictment. While Russell cites Stirone, the Court in Russell had already concluded that an essential element was omitted from the indictment, yet proved at trial, therefore rendering the Stirone analysis applicable. That the possibility of an amendment or variance is not applicable to evaluation of the sufficiency of an indictment is obvious: such is always possible, yet not every indictment is invalid. The proper inquiry here must be limited to the charges in the indictment itself
 
 
 [1]
 I agree with the majority opinion that the indictment's CCE count in the instant case has sufficient time, place and offense specificity that, with the record, the defendants can avoid any double jeopardy problems
 
 
 [1]
 The majority cites three cases, two from the Seventh Circuit and one from the Eighth Circuit, to support its conclusion that the allegations in Count I can be considered to determine the sufficiency of Counts II and III: United States v. Esposito, 771 F.2d 283, 288-89 (7th Cir.1985), cert. denied, 475 U.S. 1011, 106 S.Ct. 1187, 89 L.Ed.2d 302 (1986); United States v. Moya-Gomez, 860 F.2d 706, 752 (7th Cir.1988); and United States v. Becton, 751 F.2d 250, 256-57 (8th Cir.1984), cert. denied, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). See also United States v. Zavala, 839 F.2d 523, 526 (9th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988). I do not find these cases persuasive for several reasons. First, in Esposito, Becton, and Zavala, the defendants did not challenge the sufficiency of the indictment before the district court. Because "judicial efficiency requires that tardily-challenged indictments be construed liberally in favor of validity," United States v. Freeman, 813 F.2d 303, 304 (10th Cir.1987), I do not think those cases are determinative of our case, where the appellants challenged the indictment before trial. Second, Becton was decided prior to Miller, 774 F.2d at 885, where the Eighth Circuit held that each count must be read as a separate indictment, and thus Miller represents current Eighth Circuit law. Third, none of those cases focused on the Fifth Amendment right to a grand jury indictment. Esposito, Moya-Gomez, and Becton dealt only with the notice requirements and concluded that, because the defendant had actual notice of the predicate offense, the notice requirement was satisfied. Finally, Esposito, Moya-Gomez, and Zavala did not discuss the reasons for departing from prior precedent from the same circuit holding that each count of an indictment must be read as a separate indictment
 
 
 [2]
 Moreover, the allegations in the challenged count against the defendant in Neal (which dealt with a charge of extortion under 18 U.S.C. Sec. 894(a) rather than a charge of violating 21 U.S.C. Sec. 848) contained significantly more detail and precision than was present in the challenged counts against Staggs and Teafatiller
 
 
 [3]
 In Miller, the Court rejected Bain 's other holding, not here relevant, that it is constitutionally impermissible to drop unnecessary allegations from the indictment
 
 
 [4]
 The concurring opinion suggests that the failure to allege the specific transactions that constitute "a continuing series of violations" is similar to the failure to allege which eye witnesses the prosecutor intends to use to prove a bank robbery. I respectfully disagree. A defendant does not need to know the names of the witnesses who will testify against him in order for him to know precisely what acts the grand jury has charged against him. However, unless the specific transactions or acts for which he is being charged are set forth in the indictment, a defendant cannot know what "essential facts" (as opposed to conclusions of law) were found against him by the grand jury
 Moreover, the use of the semantic labels "evidence" or "elements" to determine the adequacy of an indictment is not very helpful because of the inherent ambiguity of those labels and because the decision of which label to use is outcome determinative. For example, the very definition of a continuing criminal enterprise is the commission of three transactions that violate sub-chapters I or II of Chapter 13 of Title 21. Hence, the three specific transactions charged against the defendant together constitute by definition one of the elements of a CCE crime--the element of a "continuing series of violations." Surely a simple allegation that a defendant has violated something somewhere in sub-chapters I or II of Chapter 13 of Title 21 of the United States Code would not allege with sufficient specificity a crime upon which a defendant could be convicted. Merely adding additional allegations that the violations occurred within a two-year period within the Eastern District of Oklahoma and elsewhere and that they regarded amphetamines would not adequately allege a substantive crime under sub-chapters I or II of Chapter 13 of Title 21 of the United States Code. It is hard to see, therefore, how repeating those generalized legal conclusions three times over is somehow sufficient to allege a continuing criminal enterprise under 21 U.S.C. Sec. 848.
 
 
 [5]
 The majority would dismiss this comparison between civil and criminal pleading requirements because "[t]he underlying processes are structurally different" and "[t]he criminal proceeding is monitored from its inception by ... a grand jury." (Majority Opinion at n. 5). However, it is precisely to ensure this critical monitoring process by the grand jury that we must insist that the grand jury find and explicitly include in the indictment all the essential facts of the crime charged in the indictment. If the grand jury can merely write a blank check and leave it to the prosecutor to fill in the blanks by deciding later which "essential facts" should form the basis of the prosecution against the defendant, then the monitoring process of the grand jury, upon which the majority appears to rely, is imperiled
 
 
 [6]
 The majority cite cases from other circuits that reached a different result. See, e.g., United States v. Amend, 791 F.2d 1120, 1125 (4th Cir.), cert. denied, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); United States v. Johnson, 575 F.2d 1347, 1356 (5th Cir.1978), cert. denied under various names, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979); United States v. Sperling, 506 F.2d 1323, 1344 (2d Cir.1974), cert. denied under various names, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); United States v. Sterling, 742 F.2d 521, 526 (9th Cir.1984), cert. denied, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985). Those cases, and others that have held that tracking the statutory language is sufficient, or, in the alternative, that the predicate acts need not be alleged, have generally limited their analysis to notice and double jeopardy concerns, and have not focused on the Fifth Amendment right to have a grand jury issue the indictment and define the charges which the defendant must answer at trial. In any event, to the extent that those cases are inconsistent with Russell, I disagree with them
 
 
 [7]
 In any event, a bill of particulars is answered by the prosecutor, not by the grand jury. Therefore, whatever it might do to satisfy the notice requirement, a bill of particulars does nothing to protect the defendant's right to have the grand jury operate as the gatekeeper to decide which specific offenses he will be required to defend against in a criminal trial. If a prosecutor, by means of a bill of particulars, can unilaterally choose which transactions within a two-year period the defendant must respond to, then the prosecutor is usurping the grand jury's role